Pbkrson C. J.
 

 Although it be conceded that, as the testator died before the war, the will should be construed according to the idea of public policy then acted on by our
 
 *287
 
 courts, still the position that the provision for emancipation being
 
 prospective
 
 is illegal, and consequently that the legacy given to the slaves was void, is not supported by any authority or principle.
 

 The whole subject is so fully discussed in
 
 Myers
 
 v.
 
 Williams,
 
 5 Jon. Eq. 362, as to make it useless to elaborate it further. It is there taken as settled, that a provision for emancipation after the termination of a life estate is not against public policy. The fact that a large fund was to be made up in part by their future earnings does not affect the question.
 

 Assuming therefore that, if the war had not occurred, and if the widow of the testator had died without marrying again, the slaves would have been emancipated in the manner provided for by the will, and would have taken the legacy, the question is: Do these tacts separately, or in connection, have the effect of depriving them of the legacy or any part of it ?
 

 One of the results of the war was to effect the emancipation of slaves without the cost of transportation to Liberia, or other free countries, and the controversy between the claimants is, to whose benefit shall this saving accrue.
 

 Upon a general view, it would seem that this collateral advantage caused by what, as between these parties, was a mere accident, should be a “wind fall," or piece of good luck to the freedmen; because they are the immediate object of the testator’s bounty in regard to the legacy under consideration rather than to the persons who are in no respect the objects of this bounty. Especially should this be the case in the absence of any indication of an intention on the part of-the testator that the legacy given to his slaves was in any wise to depend on the manner in which their emancipation should be effected.
 
 Haley
 
 v.
 
 Haley, ante
 
 180. There is nothing in the will to show that the application of a part
 
 *288
 
 of the fund to the payment of expenses of transportation was to be of “the essence of the gift,” and make a condition. On the contrary this direction may be ascribed entirely to the fact that, at the time, there was no other mode of emancipation except by removal from the State, and affords no ground for an implication that the testator desired that the slaves should remove from the State; indeed, judging by the many cases in which the court have been called on to enforce this provision of the law, there can be no doubt that, as a general rule, testators l^ve submitted to this requirement unwillingly, and would gladly have .been .relieved from it. • ■
 

 Taking a more particular view of the case, it was said on the argument, “This legacy is given as
 
 the means
 
 of effecting the emancipation of the slaves. That object has been .accomplished by the general emancipation which was a result of the war, so there is no occasion to resort to the means, and for that reason the legacy fails.”
 

 If there was any thing in the will to show that the legacy was given simply as a means to effect an object, and that the slaves were the objects of the testator’s bounty to that extent only — as for instance, if the testator had directed so much of this one-seventh part of his estate to be applied to defray the expense of transportation, as was necessary for that purpose, and that the balance of the fund should be paid over to A, B & C, there would have been much force in the argument, and the case would have fallen within the principle adopted in
 
 Liverman
 
 v.
 
 Carter,
 
 4 Ire. Eq., 59. There the testator appropriated $100 to the use of schooling and educating
 
 a boy,
 
 with a limitation over to A, in case the money was not used for that purpose. The boy arrived at age, married, and had two children before the testator died; and it was held that the legacy passed over to A, on the ground that the special application was a condition pro
 
 *289
 
 cedent, and the limitation over showed that the testator intended its use in that mode to be of the essence of the gift to the boy. But, in our case, one-seventh part of the estate, increased by the codicil to two-sevenths, is given to the slaves as a distinct bequest; a part to be applied to pay expenses of transportation; a part to meet expenses of buying farming utensils and settling them; and
 
 the balance of the funds to be paid over to the slaves;
 
 so that, instead of a limitation over to a third person of the fund, or any part of it, being made under any circumstances, or in any event, the whole of it is given to the slaves, and it is an absolute bequest under the principle recognised as the general rule in
 
 Liverman
 
 v. Carter,
 
 supra;
 
 and settled by many cases.
 
 Barton
 
 v.
 
 Grant, Nevile v. Nevile,
 
 2 Vern. 430;
 
 Barlow
 
 v.
 
 Grant,
 
 1 Vern., 254;
 
 Barton
 
 v.
 
 Cocke,
 
 5 Vesey, 461;
 
 Cope
 
 v.
 
 Wilmot,
 
 Amb. 704. The principiéis this: When there is no limitation over, directions in regard to the application of the fund,
 
 e. g.,
 
 “to enable him to complete his education,” or, “to study law,” or, “to buy a Library,” are taken as merely “advisory,” and suggestive of the motive for making the gift, and of the opinion of the testator as to the best mode of using it, but the legacy is absolute, — and it is only held tobe conditional when there is a limitation over to a third person, in case the fund should not be psed in the manner directed.
 

 There is a large class of cases in which the principle is carried further, and applied to legacies where express words of condition are used; for instance a legacy to a wife, but in case of marriage the legacy is to be void; or to a daughter, but if she should marry under the age of twenty-one, without the consent of her mother, the legacy shall be forfeited”; or a clause of this kind, “should any one or more of my legatees contest this will, the provision I have made for them is to be void and of no effect.” In all of these cases, in the absence of a limitation over, such words are taken as no
 
 *290
 
 more than the expression of an earnest request or a strong remonstrance, and are technically termed words “m
 
 ierrorem,”
 
 and the legacies are absolute. It is only when what is given is, in default of the first taker, given over to a third person, that the nature of a conditional limitation is fixed upon it, so as to become a part of the essence of the g-ift, whereby it may be defeated. See 1 Jarman on Wills, 538, and other text writers, where all the cases are cited.
 

 It is said, in the second place, that in regard to that portion of the fund which would have fallen to those of the slaves who were again reduced to slavery by the legacy to the widow in the event of her marriage, and who Avere assigned to her as her portion of the testator’s estate, the legacy fails, for at the time Avhen it was to Amst, (to-AAÚt, upon her marriage,) they Avere not capable of taking, and this incapacity to take is not aided by the fact that they Avere subsequently emancipated, so that this part of'the fund passed either to the residuary legatees or to the next of kin.
 

 If the legacy had been given to the slaA’es
 
 nominatim,
 
 oías individuals, this conclusion Avould have been true, but a complete ansAver to it is, that the legacy is given to the
 
 slaves asa class,
 
 and such of them as answer the description and make up the class are entitled to the Avhole fund. This is settled:
 
 ex gr.,
 
 a legacy to the children of A, and some of them die in the life time of the téstator; there is no lapse, and such as answer the description at his death take the Avhole; or, it the division be postponed until a future event, as the tailing- in of a life estate, all Avho ansAver the description at that time are entitled to the
 
 whole
 
 fund.
 

 This disposes of the case except as between the freedmen. The pleadings do not raise any matter of controversy as to them, and we are relieved from the necessity of deciding, Avhetlier, upon principles of equity, those of them who were so fortunate as not to be reduced to slavery a second time
 
 *291
 
 by the effect of the widow’s dissent from the will, or by her second marriage, could be heard, or allowed to take the ground, that ihose upon whom the misfortune fell should be further injured by being thereby excluded from a right to participate in a fund, which the testator intended for them all; but it may not be amiss to say, it is a settled principle in equity that where two or more are liable to a common burden, and the whole falls upon one, he is entitled to contribution from the others; and if would seem that according to natural justice, the others could not by reason of his misfortune, in having the burden fall on him, make that aground of further prejudice, because the burden was common, and, but for accident, it might have fallen on them. There will be a decree according to this opinion; costs to be paid out of the fuud.
 

 Per Ooriam.
 

 Decree accordingly.