## JERVIS v. LEWELLYN.

(Filed June 10, 1902.)

WILLS—*Legacy—Slaves.*

Where a man makes a will in 1860 and dies in 1861, leaving certain property to his wife during her life and then to his slaves, naming them, and the widow died in 1899, the slaves can not take under the will.

ACTION by G. W. Jervis, administrator of Lucy Jervis, against J. R. Lewellyn, executor of John Jervis, heard by Judge *H. R. Starbuck,* at Chambers, in Winston, N. C., December 12, 1901. From a judgment for the plaintiff, the defendant appealed.

*E. L. Gaither,* for the plaintiff.
*W. F. Carter,* for the defendant.

MONTGOMERY, J.   The testator, John Jervis, made his will in 1860 and died in January, 1861. He devised and bequeathed to his wife, Elizabeth, during her natural life, all

his real and personal property, the same "to be kept together on the land herein bequeathed to her during her natural life; and at her death I give, will, bequeath and devise to my negro slaves, Lucy, Robert, David, Rial, Elick, George and Matilda, each, one hundred dollars, to be paid to them by my executors hereinafter named, and to be paid to them before the title to my real estate shall be conveyed." Lucy died in July, 1861, and this action was brought by the administrator, the plaintiff, to recover the legacy, the widow of the testator having died in 1899. The amount charged upon the property in favor of Lucy was a vested legacy—the interest being *in presenti,* the enjoyment *in futuro.* But the legatee under the laws of the State, when the testator died, and up to the time when she died, could not take the legacy. A slave could not be the owner of money or property at that time, except in a very qualified way. *White v. Cline,* 52 N. C., 174; *Whedbee v. Shannonhouse,* 62 N. C., 283. In the last-mentioned case (a case in point with the one on the question involved here) the testator made provision for the emancipation of his slaves and arranged a fund for their transportation to Liberia, the balance of which fund, if any should be left over, to be divided between them. His widow dissented from the will and shortly afterwards married and had her share of her deceased husband's estate allotted to her, including a number of the slaves. Emancipation was brought about by the results of the war, 1861-'65, and suit was brought by the slaves, including those who had been allotted to the widow, for the fund provided for their emancipation under the will. It was there argued by counsel for the defendants that, as to that part of the fund which would have come to such of the slaves as were reduced to slavery again by their having been assigned to the widow as her share of the testator's estate, the legacies failed, for at the time when it was to vest (upon the widow's marriage) they were not capable of taking, and that their inca-

pacity to take was not aided by the fact of the subsequent emancipation; and that that part of the fund passed either to the residuary legatees or to the next of kin. The Court said: "If the legacy had been given to the slaves *nominatim* or as individuals, this conclusion would have been true." That is the case here. Lucy having been incapacitated at the time of the vesting of the legacy (the death of the testator) to take the vested legacy, it became lapsed. She was in *esse,* in being, when the legacy was intended to be vested by the testator, but the laws incapacitated her to take.

Upon the agreed facts, judgment should have been for the defendant.

Reversed.