## J. W. IRION v. MARY D. YELL ET AL.

### Decided November 2, 1910.

**1.—Appeal—Affirmance—Reason for Judgment.**

If any phase of the facts found by a trial court will support the judgment rendered, it should be affirmed on appeal, without regard to the reason assigned by the trial judge for rendering the same.

**2.—Deed of Trust—Construction—Promise to Pay.**

A deed of trust considered, and held, although it contained no explicit promise to pay the debt therein mentioned together with compound interest thereon, a fair and reasonable construction of the instrument in the light of the concomitant circumstances evidenced an undertaking on the part of one of the signers to pay said debt and interest, and on the part of the other signer that her land therein described. should be bound for the payment of said debt and interest.

**3.—Purchase Money Notes—Compound Interest—Novation.**

An agreement, in consideration of an extension of time, to pay compound, instead of simple, interest on notes given for the purchase of land, would make such interest part and parcel of the purchase money debt evidenced by the notes.

**4.—Surety—Deed of Trust—Release of Principal.**

Notes given for the purchase of land were signed by the two purchasers; subsequently, in consideration of an extension of time granted to the makers of the notes, a third party gave a deed of trust on her land to secure the payment of the notes, and in the same instrument one of the makers of the notes agreed to pay compound instead of simple interest on the debt, the other maker refused to pay compound interest or to sign the deed of trust containing such agreement; thereafter without the consent of the owner of the land described in the deed of trust the holder and owner of the notes accepted from the maker who had refused to pay compound interest the amount of the debt and simple interest thereon in full payment and satisfaction of the notes and the vendor's lien, and transferred and assigned said notes to said maker. Held, said transaction released the other maker of the note from his obligation to pay compound interest, and discharged and released the land as security for the debt.

**5.—Principal and Surety—Release of Security—Intention of Parties.**

A surety will be discharged by the act of a creditor in releasing the property of the debtor from a lien held by the creditor as security for the debt, and this, though it was not the intention of the creditor that his act should have the effect of releasing the lien. Parties can not avoid the legal consequences of their acts by merely declaring that they should not have such and such effect.

**6.—Written Instrument—Construction Against Writer.**

Certain promissory notes described in a deed of trust, on their face bore simple interest; the deed of trust was given subsequently in consideration of an extension of time, and stipulated that the notes should bear compound instead of simple interest; still later the deed of trust was renewed by an agreement in writing prepared by the holder of the notes in which it was recited that said notes were just, due and unpaid and that "in order to secure the payment of each of said notes according to their face, tenor and effect" the deed of trust was revived, renewed or reinstated. Held, the renewal agreement required the payment of only simple interest on the notes.

**7.—Deed of Trust—Payment of Debt—Power of Trustee.**

After the payment of a debt, to secure which a deed of trust was given, the trustee has no power to sell thereunder the property pledged as security.

**8.—Same—Beneficiary—Request to Sell.**

A deed of trustee provided that the trustee was empowered to sell the property at the request of the beneficiary named therein, his heirs, executors, administrators, assigns, or the holder and owner of the notes to secure which the deed of trust was given. Held, the language must be construed to mean that upon the transfer of the notes the legal holder and owner alone had authority to request the trustee to sell.

**9.—Same—Condition of Sale—Strict Observance.**

The conditions imposed by the grantor upon the trustee in a deed of trust must be strictly observed in making a sale thereunder. Said conditions can not be disregarded because it may have become impossible to comply with them.

**10.—Same—Trustee as Owner of Debt.**

Intimated that when the trustee named in a deed of trust becomes the holder of the debt to secure which the deed was executed, his power to act as trustee ceases.

**11.—Same—Parol Testimony to Vary, Incompetent.**

Testimony of a grantor in a deed of trust as to his or her understanding of the intention or purpose of the instrument is incompetent in the absence of evidence that the beneficiary was in any manner responsible for a misunderstanding of the legal effect of the same. And so as to the understanding of the grantor that other persons were to join in the execution of the same.

Appeal from the District Court of Montgomery County. Tried below before Hon. L. B. Hightower.

*Wm. J. Berne,* for appellant.

*Lewis & Austin* and *Dean, Humphrey & Powell,* for appellees.

REESE, ASSOCIATE JUSTICE.—As originally instituted, this is a suit by Mary D. Yell against J. W. Irion, executor of J. L. Irion, to enjoin the sale by him as substitute trustee, of certain land belonging to Mary D. Yell under the provisions of a certain deed of trust executed by her to J. L. Irion.

Pending the suit P. R. Yell and P. M. Yell, whose connection with the case will appear from this opinion, and also Lucile, Blanche and Leo Yell, to whom Mrs. Yell had conveyed one of the tracts of land covered by the trust deed prior to the institution of this suit, were made parties. Mrs. Yell died pending the suit and P. M. Yell, her administrator, made himself a party plaintiff. Upon trial without a jury judgment was

rendered for plaintiffs, perpetuating the temporary injunction granted, from which defendant Irion, executor, prosecutes this appeal.

At the request of appellant the trial court prepared and filed conclusions of fact and law. The several issues presented by the pleadings and evidence, so far as material to the disposition of this appeal, will sufficiently appear from the conclusions of fact of the trial court and the assignments of error discussed, without encumbering this opinion with even a general statement of the allegations of the pleadings. There is no claim that the facts found are not pertinent to the issues presented by the pleadings. The findings of fact by the trial court are here inserted, and adopted by us, subject to what is said in passing upon the sixth, seventh, eighth, ninth and tenth assignments of error. The only findings of fact objected to are those embraced in the eighth, nineteenth and twentieth paragraphs of the conclusions, which are objected to on the ground that the only evidence supporting these facts was erroneously admitted over appellant's objection, which error is further presented by appropriate assignments of error.

"Conclusions of fact: 1. On the 1st day of August, 1890, L. A. Killian and wife, L. M. Killian, sold and conveyed to Percy R. Yell & Bro., 503 acres of land, a part of the R. Rogers league in Montgomery County, Texas, and as a part consideration for said sale the said Percy R. Yell & Bro. executed and delivered to the said L. A. Killian and L. M. Killian, among others, two notes for the principal sum of $600 each, bearing date August 1, 1890, and maturing January 1, 1892, and January 1, 1893, respectively, and bearing interest from their date at the rate of ten per cent per annum, not compounded. Said notes were numbers 2 and 3 of the series of notes executed by the said Percy R. Yell & Bro. to the said L. A. and L. M. Killian for said land, and being the middle and last of said series of notes.

"2. On and prior to the 17th day of December, 1896, the following payments had been made on said notes 2 and 3, towit:

"On said note No. 2, the following payments: January 1, 1891, $25; February 18, 1892, $65; January 7, 1893, $62.28; February 6, 1894, $187.15; November 1, 1894, $189.76.

"On said note No. 3, there had been made the following payments, at the following times, towit: January 1, 1891, $25; February 18, 1892, $65.

"3. Prior to the 17th day of December, 1896, J. L. Irion became the legal owner and holder of said notes 2 and 3, and on or before the said 17th day of December, 1896, the said Irion caused to be written by James R. Davis a trust deed covering the two tracts of land described in plaintiff's petition and in the answer of the defendant Irion, which said trust deed on its face was prepared to be executed by, and purports to be the act and instrument of, Mary D. Yell (the mother of the members of the firm of Percy R. Yell & Bro., composed of P. R. Yell and P. M. Yell, Jr.), and said Percy R. Yell & Bro., and said P. R. Yell of the county of Montgomery and State of Texas, and the said P. M. Yell, Jr.,

of the county of Grimes, State of Texas. Said trust deed recites that: 'For and in consideration of the sum of $10 to us in hand paid by James R. Davis of the county of Montgomery and State of Texas, the receipt of which is hereby acknowledged, and the natural affection of the said Mary D. Yell for her said two sons, and the further consideration of the extension of two years further time from the date hereof by J. L. Irion of said county of Montgomery and State of Texas, of the principal sums now due and owing and duly executed by the said Percy R. Yell & Bro., and held and owned by the said J. L. Irion, each for the principal sum of $600, and more particularly described in the conditional part of this deed, have bargained, sold and by these presents do grant, bargain, sell and convey unto the said James R. Davis and to his successors and substitutes in this trust instrument.' Here follows a description of the two tracts of land as in the pleadings of the parties to this suit. On said 17th day of December, 1896, and for a long while prior thereto, the said Mary D. Yell was a widow, and was the sole and only owner of said two tracts of land, and the said Mary D. Yell continued to be a widow until the time of her death on the 27th of March, 1908.

"4. Said trust deed contains the following conditions, stipulations and provisions, material to the issues involved in this cause: 'The above conveyance is, however, in trust, and is to be null and void upon the condition that the said Percy R. Yell & Bro. on or before two years from this date pay to the said J. L. Irion, the owner and holder of said two certain promissory notes, or his assigns thereof, the two principal sums and all interest now due thereon and annually hereafter ten per cent per annum interest from the date hereof, upon the amounts, principal and interest, now due thereon, said interest to compound annually at the same rate till both principal and all interest thereon are fully paid, said notes being the middle and last of three notes (the first being fully paid), given by the said Percy R. Yell & Bro. for the purchase money for a certain other tract of 503 acres of land, another part of said Rogers league, on the day of the date of said notes, deeded to the said Percy R. Yell & Bro. by L. A. Killian and his wife, L. M. Killian, all of said notes dated at Montgomery, Texas, August 1, 1890, executed and signed by the said Percy R. Yell & Bro., payable to the order of L. A. Killian and L. M. Killian and bearing interest at the rate of ten per cent per annum; said middle and last each for $600 bearing interest from their dates; said middle one due on or before January 1, 1892, with the following credits at the date hereof endorsed on the back thereof, towit: January 1, 1891, $25; February 18, 1892, $65; January 7, 1893, $62.28; February 6, 1894, $187.15, and November 1, 1894, $189.76. And said last and other $600 note due on or before January 1, 1893, with the following credits at the date hereof, endorsed on the back thereof, towit: January 1, 1891, $25 and February 18, 1892, $65. Then and in such case the above conveyance shall have no further force or effect and said herein conveyed two tracts of land shall be released at the cost and expense of the said Mary D. Yell. But in case of the failure or default by

the said Percy R. Yell & Bro. in the payment of said balance, principal and all interest, now, at the date hereof, due and owing upon both of said two promissory notes, each of said $600 principal, and ten per cent per annum interest annually from the date hereof upon said balance, with said interest thereupon compounded at the same rate annually, in full on or before two years from this date, then and in such event the said James R. Davis is by these presents fully authorized and empowered and it is hereby made his duty at the request of the said J. L. Irion, his heirs, executors, administrators, assigns, or holder and owner of said two $600 notes, at any time after two years from the date hereof, to sell the said two above described and conveyed tracts of land or either and a sufficiency of them during legal sale hours on the first Tuesday of a month, at auction, to the highest bidder for cash to him in hand paid, at the courthouse door at Conroe in said Montgomery County and State of Texas. after giving public notice thereof at three public places in said Montgomery County, Texas, one of which shall be at the courthouse door, for at least twenty days prior to said day of sale, and, at his discretion, advertising the same in any newspaper published in said Montgomery County, and after said sale or sales, upon the payment of the purchase money thereof, to make to the purchaser or purchasers thereof a good and sufficient deed in law to and for the premises so sold, with the usual covenants and warrants binding upon us for title thereto, and to receive the proceeds of said sale or sales, and to apply a sufficiency of the same to the payment to the balance of said balances now owing upon said two $600 notes, according to the tenor, reading and effect hereof, and all the costs and expenses of executing this trust, including ten per cent commissions on said sales to said trustee for executing the same, he holding the remainder thereof, if any, subject to the order of the said Mary D. Yell, her executors or administrators. And it is hereby expressly provided that should the said James R. Davis from any cause whatever fail or refuse to act in these premises or become disqualified from acting as such trustee, then the said J. L. Irion as the holder and owner of said two $600 notes and this deed of trust shall have and is hereby granted full power to appoint a substitute in writing, who shall have the same powers as are hereby delegated to the said James R. Davis.'

"5. P. R. Yell, in his individual capacity only, signed and acknowledged said trust deed on the 17th day of December, 1896, and thereafter on the same day it was tendered to P. M. Yell, Jr., who after reading said instrument refused to sign or acknowledge the same, and said instrument was by the said P. M. Yell, Jr., handed back to W. F. Sanders, a notary public, who had been requested by the said J. L. Irion to procure the execution thereof by said P. M. Yell, Jr.

"6. J. L. Irion, the beneficiary in said trust deed, was present and saw P. M. Yell, Jr., read the same and knew that he refused to execute it. Upon the refusal of P. M. Yell, Jr., to execute said instrument, it was returned to the said J. L. Irion by the said Sanders, who stated to said Irion that P. M. Yell, Jr., refused to sign it. Thereupon the said

Irion returned said instrument to said Sanders and requested him to present the same to Mary D. Yell for her signature and acknowledgment.

"7. On the following day the said Sanders repaired to the house of P. R. Yell, where Mary D. Yell was then living, and presented said trust deed to her to be signed and acknowledged, and at the request of of said Mary D. Yell the said Sanders, who was a justice of the peace and ex officio notary public, undertook to read and explain said trust deed to her, and the said Mary D. Yell at the conclusion of the explanation stated to Sanders that if it was for money for the boys, P. R. Yell and P. M. Yell, it was all right and she would sign it, and thereupon she signed and acknowledged said instrument to and before the said W. F. Sanders.

"8. At the time Mrs. Mary D. Yell signed and acknowledged said trust deed, she believed that the same had been or would be signed by Percy R. Yell & Bro. and P. M. Yell, Jr.

"9. Percy R. Yell & Bro. did not execute said trust deed, nor was the same ever executed by P. M. Yell, Jr.

"10. Neither the firm of Percy R. Yell & Bro. nor P. M. Yell, Jr., ever promised to pay compound interest, or agreed that the interest should be compounded annually on the two notes described in said trust deed.

"11. James R. Davis, the trustee named in said trust deed, departed this life early in the year, 1901, and prior to October 1, 1901.

"12. On the 1st day of October, 1901, J. L. Irion, beneficiary in said trust deed, endorsed thereon the following appointment of substitute trustee, towit: 'James R. Davis, the trustee in the within deed of trust, having died, I hereby nominate, constitute and appoint J. W. Irion of Ft. Worth, Tarrant County, State of Texas, substitute trustee in the within named deed of trust, with all the powers of the original trustee therein.'

"13. On April 1, 1901, there was paid on said note No. 3 the sum of $35, which was duly credited thereon.

"14. Prior to the 12th day of November, 1902, J. L. Irion caused to be written an endorsement of renewal on said trust deed to be executed by the said Mary D. Yell, and which said endorsement of renewal was duly executed by the said Mary D. Yell before C. W. Nugent, county judge of Montgomery County, Texas, on the 12th day of November, 1902, and said renewal is in language as follows: 'I, Mary D. Yell, do hereby acknowledge that both of the notes described in the within deed of trust, and to secure the payment of which said deed of trust was given, are just, due and unpaid save and except a credit of $35 endorsed on said note No. 3 on April 1, 1901, and in order to secure the payment of each of said notes according to their face, tenor and effect, I have this day and by this endorsement on said deed of trust do revive, renew and re-instate said deed of trust, and agree and contract that the same shall be as binding and valid on me as it was on the day of its date. This the 12th day of November, 1902. M. D. Yell.'

"15. On the 13th day of November, 1902, the trust deed with the

renewal so executed thereon, was for the first time filed for record in the office of the county clerk of Montgomery County, Texas.

"16.   J. L. Irion died testate in Montgomery County, Texas, on December 31, 1904, and by his will, J. W. Irion, defendant herein, was appointed executor of his estate, independent of the control of the County Court.   Immediately on the death of the said J. L. Irion his will was duly probated and the said J. W. Irion qualified as executor and took charge of his estate, and has since his qualification as aforesaid been administering the estate under the will.

"17.   J. L. Irion in his lifetime never demanded of Percy R. Yell & Bro. or P. R. Yell and P. M. Yell, Jr., payment of compound interest on the two notes described in the trust deed.

"18.   No consideration was received by or inured to Mary D. Yell for the execution of said trust deed.

"19.   At the time the said Mary D. Yell signed and acknowledged said trust deed, she did not know that the two notes described therein did not themselves provide for the compounding annually of the interest thereon, and she did not know or understand that said trust deed provided for the payment of interest other than as called for in said two notes.

"20.   At the time said Mary D. Yell signed and acknowledged said trust deed, she did not know that she was entering into an agreement and assuming an obligation to pay compound interest on said two notes, when said notes on their face did not provide for the payment of compound interest thereon.

"21.   P. M. Yell, Jr., after refusing to execute said trust deed in December, 1896, heard no more about said trust deed and did not know it was ever signed and acknowledged by his mother, Mary D. Yell, until in March, 1904.

"22.   Prior to the 3rd day of April, 1905, P. M. Yell, Jr., and J. W. Irion as executor of the estate of J. L. Irion, deceased, had up the matter of the payment of said two notes, and on said 3rd day of April, 1905, the said P. M. Yell, Jr., wrote to the said J. W. Irion offering to pay the principals of said two notes with simple interest thereon at the rate of ten per cent per annum, reciting in said letter that Percy R. Yell & Bro. had not assumed to pay compound interest thereon, nor had he himself promised to pay it.

"23.   By letter dated the 10th of April, 1905, the said J. W. Irion agreed to accept from the said P. M. Yell, Jr., the principals of said two notes with simple interest thereon in full payment thereof without reference to the deed of trust, and sent said notes to Mr. Norwood of Navasota with the following transfers endorsed on each of them, towit:   'I hereby transfer without recourse on me, for value received, the within note to P. M. Yell.   (Signed) J. W. Irion, Ind. Ex. Est., J. L. Irion, deceased,' with instructions to deliver said notes to said P. M. Yell, Jr., on payment by him of the principals of said two notes and simple interest thereon at the rate of ten per cent per annum.   Thereafter, and in the

said month of April, 1905, the said P. M. Yell, Jr., paid to Norwood for J. W. Irion, independent executor of the estate of J. L. Irion, deceased, the principals of said two notes with simple interest thereon at ten per cent per annum, and thereupon said two notes were by Norwood delivered to said P. M. Yell, Jr., as per instructions to him by said Irion with the transfers thereon as above set forth.

"The said Irion also agreed if P. M. Yell, Jr., would pay the principals of said two notes and simple interest thereon as provided for in the notes, he would release to him the 503 acres of land for a portion of the purchase money of which said notes were executed. And, pursuant to said agreement, the said Irion did on the 31st day of August, 1905, as independent executor of the estate of J. L. Irion, deceased, execute to the said P. M. Yell, Jr., a release of the vendor's lien on said 503 acres of land, which said release, among other things, has the following recitals and provisions: 'And whereas, as a part consideration for said land, the said P. R. Yell & Bro., did execute and deliver to the said L. A. Killian and L. M. Killian three certain promissory notes, bearing even date with said deed, and payable to L. A. Killian and L. M. Killian: First note, on or before 1st day of January, 1891; note No. 2 payable on or before January 1, 1892; third and last note payable on or before January 1, 1893, and a vendor's lien was expressly retained in such deed to secure payment of said promissory notes. And, whereas, said promissory notes have been fully paid off and discharged by P. M. Yell, Jr., both principal and interest, and at the time of their payment said notes were the property of estate of J. L. Irion, deceased, now therefore, know all men by these presents, that J. W. Irion, independent executor under the will of J. L. Irion, deceased, of the county of Tarrant and State of Texas, for and in consideration of the premises and the full and final payment of said notes, have remised, released, quit-claimed, discharged and acquitted, and by these presents do remise, release, quit-claim, discharge and acquit unto the said P. M. Yell, his heirs and assigns, the vendor's lien heretofore existing upon the land and premises aforesaid.'

"24. Since the payment of said notes by P. M. Yell, Jr., and the transfer thereof to him, as aforesaid, he has been the sole owner thereof.

"25. Prior to the transfer and delivery of said notes, J. W. Irion wrote P. M. Yell and also P. R. Yell and Mary D. Yell, that, inasmuch as the said Mary D. Yell and P. R. Yell agreed to pay compound interest by signing the trust deed, it must not be understood that he (Irion) was expecting to release them from their said obligation and deed of trust. Irion stated to said parties in the same connection that he would endeavor to enforce said trust deed.

"26. On October 13, 1905, the only payments made on the indebtedness described in the trust deed was the principals of said two notes and simple interest thereon to April 16, 1905, paid by P. M. Yell, Jr., as aforesaid; and on the said 13th day of October, 1905, the said Irion

advertised for sale on Tuesday, November 7, 1905, at Conroe, Montgomery County, Texas, the land described in the trust deed, reciting in the advertisement and notices of sale that the sale would be made to pay the difference between the simple interest due on the principals of said two notes and compound interest as provided for by said deed of trust, and reciting that said difference then amounted to the sum of $1015.20. The notices of sale were duly posted as provided for in the trust deed, and a copy thereof was also inserted in the 'Conroe Saxon,' a weekly newspaper published in Conroe, said notice being published in the issues of October 13th, October 20th, October 27th and November 3, 1905, of said paper. For said publication J. W. Irion paid the publisher of said newspaper the sum of $10.

"27. On November 6, 1905, J. W. Irion left Ft. Worth, Texas, and went to Conroe, Texas, for the purpose of selling said land under the trust deed on the following day, and reached Conroe November 7, 1905. After arriving at Conroe and before sale could be made of said land, Irion was served with an injunction issued in this cause prohibiting said sale, and on account of said injunction the sale was not made.

"28. On November 5, 1905, Mary D. Yell filed her sworn original petition in this cause, in which she complained of J. W. Irion individually and as independent executor of the estate of J. L. Irion, deceased, and as substitute trustee in the trust deed hereinbefore mentioned, and among other things prayed for an injunction to restrain the sale by Irion of the two tracts of land in controversy, which she alleged he was undertaking to make claiming the right to make sale to pay compound interest; and said original petition had endorsed thereon the fiat of the judge of the District Court of the Sixty-first Judicial District of Texas, ordering the injunction as prayed for therein, and which said injunction was issued on the 6th of November, 1905, and served on J. W. Irion on November 7, 1905, in the town of Conroe. Said writ of injunction commanded said Irion to refrain from making the sale of the lands described in said trust deed under authority of said trust deed, and from proceeding to do any other or further act, and from exercising any authority under said trust deed, and from selling or attempting to sell said lands or any part thereof until further ordered of the District Court of Montgomery County, Texas.

"29. On November 27, 1905, said Irion, in the capacities in which he was sued, filed his motion to dissolve said injunction. Said motion was set down for hearing in chambers on December 11, 1905, and the plaintiff, Mary D. Yell, was notified, and on said 11th day of December, 1905, both the plaintiff, Mary D. Yell, and the defendant, J. W. Irion, being represented by their respective counsel, argument was heard on said motion, and on the same day the said motion was overruled and refused by this court. Said injunction has remained in force to the present time.

"30. In making the trip from Ft. Worth to Conroe and return for the purpose of making sale under said trust deed, the said J. W. Irion

paid expenses amounting to $17.30, as itemized in his pleadings, and lost 36 hours time of the reasonable value of $37.50, and prior to advertising said sale, the said Irion, as executor, requested himself as trustee to make the sale.

"31.  On September 1, 1905, Mary D. Yell conveyed to Lucile Yell, Blanche Yell and Leo Yell tract of land No. 1, described in the trust deed, for a recited consideration of $10 and other valuable considerations.  Said Lucile, Blanche and Leo Yell are daughters of P. R. Yell. P. M. Yell and P. R. Yell are sons of Mary D. Yell.

"32.  P. M. Yell, P. R. Yell, Lucile Yell, Blanche Yell and Leo Yell were made parties to this suit by the first amended answer of J. W. Irion, filed herein April 18, 1906, and each of said parties were either forthwith served with citation, or duly entered appearance herein.

"33.  On the 27th of March, 1908, Mary D. Yell died intestate in Montgomery County, Texas, and on the 23rd of July, 1908, P. M. Yell filed his petition in the County Court of Montgomery County, Texas, setting forth the death of Mary D. Yell and that at and before her death she was plaintiff in this suit, and setting out the objects of the suit, and alleging the necessity that a representative should be appointed for her to take her place as plaintiff in the suit and to collect and wind up the estate.  On said petition citation was duly issued and on August 19, 1908, P. M. Yell was appointed administrator of said estate and his bond fixed at $4000.  He qualified on said last named date, and letters of administration were issued to him.  No debts or claims of any kind against said estate had been presented to said administrator.  The assets of Mary D. Yell consist of 314 acres of land and one cow.  The land is worth $6 per acre and is that portion of tract No. 2 described in the trust deed after taking therefrom the 200 acres P. R. Yell homestead, as mentioned in said trust deed.

"34.  On January 14, 1909, P. M. Yell as administrator of the estate of Mary D. Yell, deceased, made himself party plaintiff and filed his pleadings, setting up the death of Mary D. Yell, his appointment as administrator, the condition of her estate, and alleging that on account of the death of the said Mary D. Yell, the power of sale, if any ever existed under the trust deed, was revoked, and prayed for the relief as prayed for by plaintiff in her petition herein.

"35.  On the 17th day of December, 1896, and at all times thereafter, P. M. Yell was solvent and if he had been liable, either individually or as a member of the firm of Percy R. Yell & Bro. for the payment of compound interest on the notes described in the trust deed, the same could have been collected from him under execution.

"36.  On December 17, 1896, and at all times thereafter, the 503 acres of land for which the two notes described in the trust deed had been executed, was of the fair market value of at least $6 per acre, and on said December 17, 1896, no part of the purchase price of the said 503 acres of land remained unpaid save and except the two notes described in the trust deed, the balance of said purchase money having

theretofore been paid from the proceeds of the sale of timber on the said 503 acres of land. In April, 1905, when P. M. Yell took up said two notes and secured the release of the vendor's lien upon said 503 acres of land, said land was of the fair market value of $6 per acre."

These conclusions of fact are followed by a conclusion of law to the effect, in substance, that J. W. Irion as substitute trustee had no authority to make the sale.

Several facts and groups of facts are urged in the petition as grounds for the relief prayed for, but as there are no intimations in the conclusions of law as to which of these grounds were sustained by the trial court as a basis of the judgment, appellant in his brief has taken the burden of showing that upon none of them can the judgment be sustained. If it can be sustained on any one of the grounds urged, the judgment should be affirmed (unless reversed for material error of procedure), whether the trial court based his conclusions on such ground or not. This is the view properly taken by counsel for all parties in preparing their briefs.

The judgment in our opinion must be sustained upon three separate grounds urged in the petition and supported by the facts as found by the trial court, and a discussion of these grounds, without separate discussion of each of the several assignments of error, will be sufficient to show our conclusions in the disposition of this appeal.

We cannot agree with counsel for appellant that the deed of trust signed by Mrs. Yell and P. R. Yell, all the material portions of which are set out in the findings of fact, imposed no obligation upon P. R. Yell to pay either the notes or the compound interest therein contracted for, or that it would have imposed no such obligation upon P. R. Yell & Bro. or P. M. Yell if it had been signed by them. It is true that there are no words in this instrument directly imposing this obligation; and no express and specific promise on their part, contained in the body of the instrument, to pay anything, still, we think, it is a fair construction of the instrument that P. R. Yell undertook, in consideration of the extension of time, to pay the notes together with the compound interest, and Mrs. Yell undertook that her land should be made liable in the event he failed to do so within the two years. In signing the instrument P. R. Yell assumed this obligation and the same obligation would have been assumed by the firm of P. R. Yell & Bro. and P. M. Yell if they had signed. This is the essential distinction between this case and the case of Hill v. Smith (21 Howard, 283), cited by appellant. This is, we think, the construction placed upon the contract by the parties themselves. P. M. Yell claimed the right to pay off the notes, with simple interest only, on the ground that he had not signed the deed of trust and therefore was not bound to pay the compound interest. Appellant acquiesced in this view, but insisted upon his right to hold both Mrs. Yell and P. R. Yell upon the obligation of the deed of trust for the payment of the compound interest. Clearly P. R. Yell could not

have been held for payment of the compound interest unless he was bound by the terms of the deed of trust, which he had signed, to do so.

In this view of the case, at least as to P. R. Yell, Mrs. Yell's land was surety. He agreed to pay the debt including compound interest, and Mrs. Yell agreed that her land should be made liable if he did not. If suit had been brought to foreclose this deed of trust, Mrs. Yell could have had P. R. Yell brought in as a party, and would, upon appropriate pleadings, have been entitled to judgment over against him as principal for the amount adjudged against her, and the same would have been secured by the vendor's lien upon his interest in the land for which the notes were given. The compound interest then agreed to be paid by P. R. Yell would have been part and parcel of the purchase money debt evidenced by the notes.

It logically follows that when appellant accepted from P. M. Yell the amount of principal and simple interest in full payment and satisfaction of the notes and the vendor's lien, and transferred and assigned the notes to him, and discharged the vendor's lien, or transferred the notes and lien to him, whatever be the effect of this transaction, he thereby released P. R. Yell's interest in the land from any further liability for the payment of the compound interest which he had agreed to pay. This discharge and release of the principal without Mrs. Yell's consent, discharged and released her land, the surety, from the deed of trust.

It is true that, as found by the court, appellant wrote to Mrs. Yell and P. R. Yell that it must not be understood that he was expecting to release them from the obligations of the deed of trust, but the holder of a debt can not avoid the consequences of his release of the principal without the consent of the surety by merely informing the surety that he does not intend thereby to release him. By surrendering the notes and releasing to P. M. Yell the vendor's lien upon the entire land, appellant had placed it out of the power of Mrs. Yell to subject P. R. Yell's interest in the land to the payment of this compound interest in case her land should be compelled to pay the same, as is sought to be accomplished by this sale. Therefore, the land of Mrs. Yell as surety was released from the deed of trust.

In 1902 the deed of trust, executed in 1896, had never been recorded, and no attempt had ever been made by J. L. Irion to collect from any one the compound interest therein provided for. It had not been signed by either P. M. Yell or the firm of P. R. Yell & Bro., as had been clearly contemplated. In this condition, J. L. Irion desired an acknowledgment and affirmation of the deed of trust by Mrs. Yell, thus avoiding any defense on her part based upon the fact that it had not been signed by P. M. Yell or P. R. Yell & Bro., or growing out of apparent laches. At any rate, such acknowledgment and affirmation of the deed of trust by Mrs. Yell was of benefit to J. L. Irion. This acknowledgment and affirmation by Mrs. Yell was prepared by J. L. Irion for his own benefit, and any ambiguous expressions therein must be taken most strongly

against him. This paper is set out in full in the conclusions of fact. It expressed the agreement of the parties with respect to the matters therein set out. By it Mrs. Yell acknowledged that both of the notes described in the deed of trust, and to secure the payment of which the deed of trust was given, are just, due and unpaid (except a credit mentioned) and that "in order to secure the payment of each of said notes according to their face, tenor and effect" the deed of trust is revived, renewed and re-instated. It must be remembered that the deed of trust was given to secure the payment of the notes, according to their face, tenor and effect, and, in addition, to secure the payment of compound interest after its execution. This instrument last referred to revives, renews and re-instates the deed of trust only as security for the notes according to their face, tenor and effect, and not for the compound interest not embraced in the notes. It must be taken that this was the agreement, and that J. L. Irion, in order to procure this acknowledgment by Mrs. Yell and in consideration thereof, gave up his claim to the security of the deed of trust for the compound interest, probably of doubtful validity or considered of doubtful validity on account of the failure of P. M. Yell and P. R. Yell & Bro. to sign. It is significant in this connection that although this deed of trust was executed in 1896 and J. L. Irion lived until 1904, he never at any time made any demand on anybody for this compound interest, and the deed of trust was not recorded until this renewal was executed. This written acknowledgment, it is true, contains the further stipulation that the deed of trust should be as valid and binding on Mrs. Yell as it was on the day of its date, but this does not, we think, have the effect of destroying the effect of the language whereby it is renewed only for the security of the notes, according to their face, tenor and effect, without the compound interest. This last stipulation must be taken to mean that the deed of trust is to be so valid and binding for the purpose to which it is limited in the renewal, and not to extend that purpose or destroy the limitation.

Having procured this endorsement on the deed of trust, J. L. Irion is bound by its stipulations, which had the effect to release the deed of trust as a security for the compound interest. The notes having been fully paid, the deed of trust was satisfied, and the trustee had no power to sell.

By the terms of the deed of trust it is provided that the trustee (or substitute trustee) was empowered, and it is made his duty in case of default, to sell the property "at the request of J. L. Irion, his heirs, executors, administrators, assigns, or the holder and owner of said two $600 notes, etc." This language can not be construed to mean that if J. L. Irion had assigned the notes, the trustee would have been required to foreclose the deed of trust by sale at the request of either of J. L. Irion or his assignee, the legal owner and holder of the notes, or that after the transfer of the notes to his executor, the trustee could be required to sell at the request either of the executor or such legal owner and holder. Such construction would authorize either J. L. Irion in

the first instance, or his executor in the second, if the notes had been assigned, to have a foreclosure of the deed of trust against the wishes of such assignee, the only person having any interest therein. The language referred to must be construed to mean that upon transfer of the notes, the legal owner and holder alone had authority to request the trustee to sell.

At the time J. W. Irion as executor requested himself as substitute trustee to make this sale, he had transferred and assigned these notes to P. M. Yell, who was the legal owner and holder thereof in so far as they were not fully paid. At any rate, J. W. Irion as executor had no longer any interest in the notes. The right to request the trustee to sell is given, not to the assignee or the legal owner and holder of the deed of trust, in which alone is there any obligation to pay the compound interest, but of the notes, which carry no such obligation. Mrs. Yell had the right to impose such conditions as she chose upon the trustee, and such conditions must be strictly observed in making such sale. These conditions can not be disregarded because it has become impossible by the payment of the notes to comply with them. It may be that the notes having been fully paid are dead and there can not be a legal owner and holder of them. This can not have the effect of authorizing a sale at the request of appellant after he had parted with the notes, for the sufficient reason that the grantor in the deed of trust had not so agreed. On this ground also, we think, that the substitute trustee was without authority to make the sale and was properly enjoined from doing so.

We suggest further, although it is not necessary to decide the question, that when J. W. Irion was appointed independent executor of J. L. Irion his authority as substitute trustee under the appointment of J. L. Irion ceased. It was the intent and purpose of the deed of trust that in the event of default some disinterested and impartial person should exercise the power of sale conferred, and this purpose could not be thwarted by an assignment of the debt by the original holder to the trustee after the execution of the deed of trust, thus making the instrument a mortgage with a power of sale in the mortgagee. Any other construction would render wholly nugatory in such case the provision authorizing the trustee or his substitute to sell only upon request of the legal owner and holder of the debt.

It will only be necessary to briefly refer to other assignments of error with regard to the admission of evidence. The testimony of Mrs. Yell, taken by deposition, as to her understanding that the deed of trust was intended to secure or did secure only the payment of the notes with interest as stipulated by them, should not have been admitted over the objection of appellant. It was not shown or claimed that J. L. Irion was to any extent responsible for any such mistake on her part. The deed of trust was read over and explained by the notary, who was not in this regard the agent of Irion, and if he was, it does not appear that he misrepresented the contents of the instrument. The instrument very clearly was intended to secure the payment of compound interest, and

J. L. Irion is in no way responsible for any misunderstanding Mrs. Yell may have had of its meaning.

Nor was it material that Mrs. Yell understood that P. M. Yell and P. R. Yell & Bro., also were to sign the deed of trust, or that she would not have signed if she had known that P. M. Yell had refused to sign the paper. There is no evidence that tends to show that there was any understanding or agreement between herself and J. L. Irion that she was not to be bound unless P. M. Yell signed the instrument, or that he had any knowledge of such understanding on her part, or that he was guilty of any misrepresentation to her to procure her signature. (Campbell Printing Press Co. v. Powell, 78 Texas, 61; Gatling v. San Augustine Co., 25 Texas Civ. App., 283, 61 S. W., 432.)

This is the only evidence which tends to support the findings of the trial court on this point, and if these findings, which are embraced in paragraphs, eight, nineteen and twenty of the conclusions of fact, were at all necessary to support the judgment it could not stand. It appears, however, from what we have said that this error, which is made the basis of the sixth, seventh, eighth, ninth and tenth assignments of error, is entirely immaterial and should not affect the judgment.

We have examined all the assignments of error and the several propositions thereunder and, with the exception of those with relation to the admission of evidence referred to, which are immaterial, they are severally overruled. We find no error requiring a reversal of the judgment and it is therefore affirmed.

*Affirmed.*

Writ of error refused