**FINLAYSON et al. v. ROBERTS.**

No. 13090.

Court of Civil Appeals of Texas. Fort Worth.

March 15, 1935.

Rehearing Denied April 19, 1935.

Nat Friedman, of Houston, Marshall & King, of Graham, and Samuels, Foster, Brown & McGee, of Fort Worth, for appellant.

Harry C. Weeks, of Wichita Falls, for appellee.

LATTIMORE, Justice.

We had not originally intended to make an extended discussion of this appeal, but the earnest motion for rehearing has convinced us that we should withdraw our original opinion.

Appellee, by her original petition filed in 1932, alleged her ownership of an oil lease and that appellant unlawfully assigned an interest therein to the Continental Supply Company and prayed for removal of cloud from title. To this the defendants answered by general denial. Finlayson amended and added to his general denial a cross-action, alleging that he owned the lease in 1931; that legal title thereto was held by Piner, a resident of Howard county, in trust for the securing of a note due the bank of which Piner was an official, and a debt due Mrs. Dora Roberts, which indebtedness was payable by defendant and his "then copartner Harrison"; that the trust was for the purpose of liquidating the indebtedness of "this defendant to said parties" out of moneys received from the sale of said properties; that Piner converted said lease of fair cash market value of $15,000; that Piner, with intent to defraud appellant, conveyed said lease to Mrs. Roberts, appellee, claiming to do so for the purpose of paying appellant's debt to her, but that in fact appellant owed her no money, which was well known to her;

that the transfer was without consideration, and was a breach of Piner's trust. Appellant prayed for citation to Piner and damages and for cancellation of the transfer of the lease by Piner to appellee. The clerk certifies in one place in the transcript that this pleading was filed August 2, 1933, and in another September 2, 1933. The case was set for September 11, 1933, and came on for trial on September 14, 1933. On the day of trial Mrs. Roberts filed an amended petition alleging an indebtedness due her in 1930 by appellant and Harrison; alleging the Piner trusteeship, and that same carried a power of sale; that the debt due the bank was paid, but that until August, 1932, the debt due Mrs. Roberts was not paid; that, in order to save the lease from forfeiture and to protect the value of same, it was necessary to develop same, to drill oil wells and expend considerable money thereon, and that failure to do so would have destroyed the value of the lease; that appellant was notified of these facts, and failed and refused to so develop said lease; that on August 24, 1932, Piner transferred the lease to Mrs. Roberts in satisfaction of her debts aforesaid; that same was more than a fair price for the lease; that Harrison "ratified, approved and confirmed the sale and accepted credit upon the indebtedness for his portion of the proceeds of said sale."

In the alternative, appellee set up her notes and alleged a lien and her expended moneys; alleged estoppel by inaction, and concluded with an appropriate prayer.

The transcript contains a plea entitled "defendant's motion to strike plaintiffs' first amended petition." It begins by moving the "court to strike the filing of the plaintiff's first amended petition or grant a continuance of this cause to the next term of court, or, if more in accordance with justice, to grant a postponement for a reasonable time to allow the defendant to prepare for trial upon such amended petition"; then follow general allegations of surprise; that defendant "does not have with him records, letters, etc.," to meet the allegations; that the new matter requires the making of new parties, and concludes with a prayer that the amended petition be stricken.

The motion to strike in such a situation addresses the discretion of the trial court. Ordinarily, the remedy of appellant, if the court does not strike, is to

move for a continuance, for litigants should exhaust their remedies in the trial court before seeking the cumbersome method of appeal, unless there be direct authority to do so. A litigant does not know that he is to be forced to trial until he has applied for a continuance. It may be as unfair to one to strike the amendment as it is to the other to force him to an immediate trial. The remedy fair to both may be a continuance. The motion above described is not sworn to, and, indeed, gives no facts which make the surprise injurious. Appellant took the stand in support of his motion, but his testimony is equally vague. Indeed, we fail to find any allegations in the amended petition which were not put in issue by the cross-action, except the allegation that Harrison had "confirmed and ratified the sale by Piner." The term of the trial court opened September 4, 1933. If the cross-bill was filed August 2, there was ample time to have Piner cited. If it was filed September 2, no excuse is shown for not filing it sooner. It is not shown that any effort was made to have citation issued or executed.

The plaintiff excepted to the cross-action of appellant as seeking two inconsistent remedies, and the court sustained the exception and ordered the appellant to elect. This appellant declined to do, and the judgment recites that "thereupon all parties announced ready for trial" and "all matters of law and fact were submitted to the court." We are at a loss to understand this proceeding. In the first place, the court was in error in requiring the appellant to elect before evidence was closed. He may plead each remedy and produce evidence which tends to support either. However, if the trial court required an election and the victim of his ruling declined to amend, the court must either retract his ruling or dismiss the cross-action. As far as the record shows, he did neither.

Appellant complains in his brief that the court refused to permit him to offer evidence of his cross-action, but we are cited to no bill of exception or other place in the record which shows that any such action took place and have not been able to find any such by our independent research. If the court did not dismiss the cross-action, it was appellant's duty to prove his allegations. We are not cited to any such proof. If the court did dismiss the cross-action, it is appellant's duty to furnish us

a record thereof. It is not pointed out, and we fail to find it.

The lease in question was transferred to Piner by an assignment from Harrison and Finlayson, unqualified by record. Some time later Piner gave a letter to the grantors as follows:

"Big Spring, Texas.
"February 16, 1931.
"Messrs. L. C. Harrison and J. A. Finlayson, Midland, Texas

"Gentlemen:—This letter will serve as an acknowledgment that I hold in trust title to twenty-five-sixty-fourths of the working interest in the H-Y Oil Company, Larrimore forty acre lease near New Castle, Texas, and also an undivided five-eighths interest in the north forty acres of the east sixty acres out of a one hundred acre tract in the north one-half of the T. E. & L. Company Survey No. 251, abstract No. 498, Young County, Texas.

"The two mineral interests above described are held by me in trust for the following purposes: First, to secure your indebtedness jointly and severally to the West Texas National Bank, Big Spring, Texas, and to Mrs. Dora Roberts of Big Spring, Texas, which indebtedness to either of the above named is to be fully liquidated first out of the proceeds of any monies I may receive from the sale of this property.

"In case of a sale of one or both of the above tracts for more than a sufficient amount to retire all of the indebtedness then existing to the above named beneficiaries of this trust, I am to account to you in equal portions for the balance unless I shall have been previously instructed in writing that one of you is indebted to the other and that the debtor's equity in this property is to be treated by me as collateral and the amount repaid before equal division of the balance is made.

"Should either of you pay off entirely your indebtedness to the above named bank and to Mrs. Dora Roberts and to the other partner and make demand on me, I agree to transfer to such a one title to his one-half interest in the above properties.

"This letter is given in triplicate and your acceptance of its terms and conditions is to be noted by your signature hereon.
"Yours very truly,
"[Signed] Robert T. Piner.
"Noted and accepted:
"[Signed] L. C. Harrison
"[Signed] J. A. Finlayson."

■■ We are inclined to the belief that this instrument did not authorize Piner to sell the lease of his own volition at private sale, but rather confines him to receiving the proceeds of a sale authorized by Harrison and Finlayson. It is not necessary to so hold, for it is conclusive that Piner did not sell in accordance with article 3810, R. S. No notices were posted and no attempt was·made to obtain bids on the date of sale. Powers of sale are strictly construed and admit of no substitution unless required by statute. Harrold v. Warren (Tex. Civ. App.) 46 S. W. 657; Irion v. Yell, 62 Tex. Civ. App. 522, 132 S. W. 69; Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070; Wylie v. Hays, 114 Tex. 46, 263 S. W. 563.

■ If the transfer to Mrs. Roberts is valid, it must be only by virtue of Harrison's oral agreement thereto. The transfer was made to her by Piner in August, 1932. Harrison testified that he was notified that the sale "was going to be made." Also he testified that he "agreed to it." Piner, trustee, "could not say" that he discussed with Harrison the transfer to Mrs. Roberts before such assignment was made. The transfer was not mentioned to Finlayson before same was made. Therefore, if the assignment to Mrs. Roberts is valid as to appellant, it must be by the acts of Harrison and his authority to act for Finlayson. No such authority is contended to exist except by a partnership relation between the two. Mrs. Roberts did not plead the existence of any partnership relation. Appellant in his answer refers to Harrison as being, at the time of the transfer of this lease to Piner, his "then co-partner." This statement was pleaded after a general denial and cannot be given effect to constitute a pleading upon which appellant's adversary can seek relief. The defendant may file inconsistent pleas without being held to having admitted any of the facts therein pleaded to the prejudice of some other defense pleaded. Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391; Illinois Bankers' Life Ass'n v. Floyd (Tex. Com. App.) 222 S. W. 967; 33 Tex. Juri. 480; article 2006, R. S.

There is no·evidence that Finlayson and Harrison were partners in this lease at the time Piner conveyed to Mrs. Roberts. There is much evidence that they had been partners in some other transactions and some testimony which is susceptible of inference that they were partners in this lease at the time it was transferred to Piner. Moreover, Harrison's indefinite testimony that he "agreed to it," coupled with Piner's inability to say that he ever discussed the assignment with Harrison before delivering same, impels us to believe that Harrison's "agreement" was made after the sale, and, if the allegations of the petition to the effect that the notes were credited with Harrison's portion of the lease be true, then it suggests that Mrs. Roberts did not at the time· of so pleading believe she had title by the oral authority of the partnership, for, if it were a partnership conveyance to her in payment of a partnership debt, there was no apportionment of the debt or the "proceeds of the sale." The whole fabric of the structure to support this judgment is unsubstantial— no pleadings by the plaintiff of the facts relied on, the surprise filing on the day of trial, reversal for which is only escaped by the failure of appellant to properly protect himself, the absence of sufficient testimony to show the fact necessary. This does not comport with justice, reluctant as we' are to give encouragement to appeals where the loser has failed to protect himself against the results.

The trial began on September 14, and the judgment recites that, after various therein described proceedings, "the case was closed and taken under consideration by the court." And thereafter, according to the judgment, on September 15th the appellant filed a written motion for leave to file a trial amendment which was attached to the motion, which motion was filed on September 18th. The judgment recites that such leave was given, but no such amendment was ever filed, unless we can consider the copy attached to the motion to be such. If "the case was closed," it was too late to file such amendment, but, if the judgment had not been rendered, then the filing of amended pleadings is within the discretion of the trial court, subject to review for abuse. The judgment recites that it was "entered" December 11th. The clerk certifies it was "filed" December 13, 1933. Judgments are not "filed." They are rendered by the judge and entered by the clerk by recording same in the minutes. It is probable that this record means that the evidence was closed on the 14th or 15th, and taken under consideration by the court, and that judgment was rendered on December 11th, and entered in the minutes on December 13th. If so, then the amendment cannot be said to be too late as a matter of law, and appellee's rights

are to be measured as were appellant's in the similar case above discussed.

The whole record indicates that justice may have miscarried. The practice of filing amended pleading on the day of trial, unless required by ruling of the court or surprise evidence, is not to be encouraged, and even then only where the situation furnishes excuse for the absence of same until then or where clearly no injury by surprise results. The prime object of a pleading is to notify the opposition of the issues in order that such opposition can produce what material he has to meet the same. This beneficent object is often defeated if pleadings are not seasonably filed. At their cheapest, trials are expensive to litigants. Here is a typical example. One litigant lives at Tyler, the other at Big Spring—each far distant from Graham. Most of the witnesses are from out of the county of trial. A litigant of modest financial ability may desperately realize that he cannot finance the assembling of his case if a continuance is granted him and be forced into a Hobson's choice of trying his case in spite of his disadvantage.

The judgment of the trial court is reversed, and the cause is remanded.