THORNTON et al. v. GOODMAN. (No. 552.)*

(Court of Civil Appeals of Texas. El Paso.
April 6, 1916. On Rehearing,
April 27, 1916.)

1. MORTGAGES ☞369(3)—TRUST DEED—SALE BY TRUSTEE—SETTING ASIDE—CONSTRUCTIVE FRAUD.

For the trustee in a deed of trust to accept employment by the beneficiary as her attorney to collect the note secured, without knowledge and consent of the grantor, is a constructive fraud on the grantor, disqualifying the trustee to act as such in making a sale, which, coupled with the fact that the sale was for a fifth or sixth of the value of the property, warrants the setting aside thereof, especially where the beneficiary was the purchaser, and still has the premises, and the grantor in the deed of trust promptly sought to set aside the sale, and offered to do complete equity.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1093, 1094, 1096; Dec. Dig. ☞369(3).]

2. COSTS ☞32(1)—RIGHT TO COSTS.

By provision of Rev. St. 1911, art. 2035, the successful party is entitled to costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108, 110, 115–132; Dec. Dig. ☞32(1).]

3. APPEAL AND ERROR ☞1170(3)—HARMLESS ERROR—RULINGS ON PLEADINGS.

Overruling exceptions to allegations of the petition as irrelevant and immaterial, if error, held harmless, for which, under Court of Civil Appeals rule 62a (149 S. W. x), reversal is not to be granted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4075, 4098, 4101, 4542; Dec. Dig. ☞1170(3).]

4. APPEAL AND ERROR ☞1062(5)—HARMLESS ERROR—IMMATERIAL SPECIAL ISSUES.

The case having been submitted on special issues, submission of immaterial issues, which could not have influenced the finding on the controlling and main issues, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4218; Dec. Dig. ☞1062(5).]

5. APPEAL AND ERROR ☞959(3)—PLEADING ☞236(4)—AMENDMENT—DISCRETION.

Refusal of an amendment of the answer, asked for after the evidence had all been submitted, even if material, held a matter of discretion, which will not be revised on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3830; Dec. Dig. ☞959(3); Pleading, Cent. Dig. § 601; Dec. Dig. ☞236(4).]

6. MORTGAGES ☞369(3)—SALE BY TRUSTEE—INADEQUATE PRICE.

A sale by a trustee under a deed of trust for $1,000 was for an inadequate price, whether the property was worth, as found, $5,800, or $1,000 less.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1093, 1094; Dec. Dig. ☞369(3).]

On Rehearing.

7. DAMAGES ☞106—DETENTION OF PREMISES—MEASURE OF DAMAGES—SPECIAL ISSUES.

The measure of damages for unlawful detention of premises is its fair cash value during the period of detention, so that refusal to submit the issue how much rent defendant received was not error.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 272; Dec. Dig. ☞106.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Lewis Goodman against A. M. Thornton and others to set aside a sale by a trustee under a deed in trust. Judgment for plaintiff, and defendants appeal. Affirmed.

G. L. & Atlas Jones, of El Paso, for appellants. Lea, McGrady & Thomason, of El Paso, for appellee.

HIGGINS, J. On February 14, 1911, Lewis Goodman and his wife conveyed to Atlas Jones certain premises in the city of El Paso; the same being conveyed in trust to secure the payment of the grantors' note in sum of $2,500, due one year after date, payable to order of A. M. Thornton, the wife of A. L. Thornton. The note provided for an attorney's fee of 10 per cent., if placed in the hands of an attorney for collection. The deed in trust granted to the trustee the usual authority to sell upon default in payment of note. By virtue of the authority so delegated, the trustee sold the premises on the first Tuesday in November, 1914, after notice had been given as the instrument required, and the premises were struck off to A. M. Thornton for the sum of $1,000; she being the highest bidder. The premises were thereupon conveyed to her by the trustee. Upon November 11, 1914, Lewis Goodman filed this suit against the Thorntons to cancel the trustee's deed and to recover the premises and rentals. Goodman, in his petition, offered to pay all principal and interest due upon the note, all expenses incident to the sale, any attorney's fees which the court might find to be due upon the note, and asked the court to prescribe the amount which he should be required to pay the Thorntons as fair and equitable.

The case was tried before a jury and submitted upon special issues. By the jury's findings, the following facts are established:

At all times prior to the sale of the premises by the trustee, Goodman was unaware that the trustee had advertised or was threatening to advertise the property for sale. The trustee did not use reasonable efforts to make the property bring the highest price at the sale. Goodman did not consent to or agree for Atlas Jones to act as trustee to sell the property at trustee's sale, after the said Jones had been employed by the Thorntons as their attorney to collect the Goodman note. Before he signed and delivered said note and deed in trust, Goodman knew that Jones was Mrs. Thornton's attorney in examining the title to the land in controversy and preparing the note and deed in trust. The fair rental value of the property from November 3, 1914, to date of trial is $885.50, and the fair cash market value of the land and improvements covered by the deed in trust was $5,800 on November 3, 1914.

In addition to the facts established by the

findings of the jury, the court, upon motion of the defendants, filed the following additional findings of fact:

That Goodman executed and delivered the note and deed in trust above mentioned. On October 5, 1914, Mrs. Thornton, acting through her agent, A. L. Thornton, placed the note in the hands of G. L. & Atlas Jones, partners in the practice of law. Said Atlas Jones was the trustee mentioned in the deed of trust. On October 5, 1914, G. L. & Atlas Jones wrote and mailed to plaintiff, at his address in El Paso, Texas, this letter:

"Mr. Lewis Goodman—Dear Sir: We have for collection your note for $2,500.00, dated February 14, 1911, payable to A. M. Thornton, bearing interest at the rate of 8%, with interest paid to February 14, 1914, and providing for 10% additional as attorney's fees. We are requested to inform you that, if this note is not paid by the 9th of this month, the property securing the note will be sold under the deed of trust you gave, and notices of the sale will be posted on the 10th instant. If you pay the note without further trouble, we shall make you some reduction in the attorney's fees. We shall be glad to have you give the matter your prompt attention.

"Very respectfully, G. L. & Atlas Jones."

Thereafter Atlas Jones advertised the property for sale under the terms of the deed in trust, the sale to take place on November 3, 1914, between the hours of 10 a. m. and 4 p. m. The trustee, through his law partner, G. L. Jones, posted three notices of sale in three public places of El Paso county, one of which was posted at the courthouse door, which notices were in proper legal form. The trustee also caused a copy of the notice to be published in a newspaper published in the English language in El Paso, with a circulation in excess of 18,000, for three consecutive weeks, prior to the date of sale, which advertisement in the paper was in full compliance with the law respecting execution sales; and on October 12, 1914, the trustee mailed a copy of the notice to Goodman at his street address in El Paso, accompanied by this letter:

"Oct. 12, 1914.

"Mr. Lewis Goodman—Dear Sir: Mrs. Thornton has requested us to foreclose on your property because your note was not paid. We inclose notice that was posted and published in Morning Times.

"Very respectfully, Atlas Jones."

On November 3, 1914, at about 2:25 p. m., while the sheriff was making execution sales, the trustee read the notice of sale and offered the property for sale at public outcry at the courthouse door of El Paso county, first offering for sale the 26 ft. piece of property, and thereafter offering for sale the 33 ft. 4 in. piece of property. Mrs. Thornton was the only buyer at the sale, and the property was knocked off to her for the sum of $500 for each piece. She made her bid through A. L. Thornton, who was present at the sale, acting for her. On November 4, 1914, the trustee executed and delivered to Mrs. Thornton deed conveying the property to her, and Mrs. Thornton, through her agent, A. L. Thornton, thereupon paid to the trustee $1,000 in cash, out of which the trustee retained a commission of $100 for making the sale and $5 to cover the expense of the advertisement in newspaper, and applied $895 to the payment of the note, and delivered that sum back to Mrs. Thornton, through her agent, A. L. Thornton. The trustee then made this indorsement on the note:

"November 4, 1914, the sum of $895.00 from trustee's sale of property mentioned in this note is credited hereon."

The trust deed provided for a commission of 10 per cent. to the trustee in making the sale of the property, and also for expenses of sale. Two or three days after November 4, 1914, Goodman, through his agent, offered to pay to A. L. Thornton, the duly authorized agent of Mrs. Thornton, the face of the note, together with all accrued interest thereon, with 10 per cent. as attorney's fees and expenses of trustee's sale, and $100 to cover A. L. Thornton's expense in coming from Los Angeles, Cal., to El Paso, to attend the sale, which offer was declined by A. L. Thornton. At the time of the execution and delivery of the note and deed in trust, Goodman knew that Atlas Jones was the attorney for Mrs. Thornton in examining the abstract of title and passing upon the sufficiency of the title to the property in controversy herein. In the matter of advertising and making sale of the property, the trustee acted in good faith and without actual intent to defraud Goodman. The court further found the facts established by the verdict of the jury, but stated that he was inclined to believe that the evidence did not support the finding that the trustee did not use reasonable efforts to make the property bring the highest price at the trustee's sale. This issue the court stated it regarded as being immaterial in the cause.

Upon the facts so found by the jury and the court, judgment was rendered in Goodman's favor, setting aside the trustee's sale, and for title and possession of the premises, together with the rental value of $885.50 for the use of the premises from November 4, 1914, to date of judgment. The court further found that Goodman was indebted to Mrs. Thornton in the sum of $3,139.76, same being the principal, interest, and attorney's fee due upon the note above mentioned, and judgment for this amount, less said sum of $885.50, was had against Goodman in favor of Mrs. Thornton, with foreclosure of lien upon the premises, and ordered that, if said sum be not paid by Goodman, the property be sold in satisfaction thereof. From this judgment, the Thorntons prosecute this appeal.

Prior to the sale, the trustee informed William Moeller, appellee's agent in securing the loan, that the property would be sold. The trustee tried to sell the property to Nick Konsiakis, who was able to buy and desired to lend his money, and also pointed out the

notice of sale to Jim Conklin, whom he heard had money. The trustee sold the property in two parcels, as they were described in the deed of trust, and according to the terms of the deed of trust, at 2:25 o'clock p. m., November 3, 1914, and each parcel was bid in by A. L. Thornton for the beneficiary in the deed of trust, bidding $500 for each parcel. The sale· was made between judicial sales then being made by a deputy sheriff of El Paso county, and several persons, besides the trustee, the deputy sheriff, and A. L. Thornton, were present at said sale. Each of said lots of land could be used separately, and were salable separately, and the lots were more easily sold to purchasers separately than together, though the evidence was conflicting as to whether the property would have brought more sold all together or sold in parcels. At the sale, the trustee stated that the purchaser would get a good title, and that the property was worth $5,000 or $6,000, and described the improvements on the land. The trustee went and looked at the property, and thought from the improvements on the same that it ought to be sold in separate parcels.

Jones testified that he desired to see the property sell for as much as possible to increase his trustee's fee of 10 per cent; that he handled the matter as trustee, and not as attorney, from the time he posted the notices of sale; that if appellee came to his office in response to the letter to appellee dated October 5, 1914, and signed by G. L. & Atlas Jones, he intended to collect some attorney's fees on the note, and regarded that the whole attorney's fee had attached to the note, and when, after appellee failed to respond to said letter, and he prepared the trustee's notice of sale, he still regarded that the attorney's fee had attached to the note, and so stated in said notice; that he, as trustee, never intended to collect, and never attempted to collect, any attorney's fee by a sale of the property; that his action in selling the property was in the utmost good faith. Neither the trustee nor his partner at any time said anything to A. L. Thornton about collecting any attorney's fee on the note. The trustee was attorney for appellants in other matters at the time of sale. At the time of sale, the trustee requested those attending one of the sheriff's sales to remain, and sold so that those standing around could hear.

Appellants, in their answer, admitted that they placed said note in the hands of G. L. & Atlas Jones as attorneys for collection, but denied that said land was sold to pay any attorney's fee. Atlas Jones was Mrs. Thornton's attorney in examining title to the property and preparing the note and deed of trust when the loan was negotiated, which fact was known to appellee. Appellee paid for Jones' services in so doing.

[1] The primary question in this case is whether, upon the facts stated, the court below erred in setting aside the sale and re-

storing the property to Goodman upon condition that he do equity. In our opinion, such action was correct. This is an equitable proceeding, and was addressed to the sound discretion and conscience of the trial judge, in the exercise of the equity jurisdiction of the district court. The action of the trustee in accepting employment by the beneficiary as her attorney to collect the note without the knowledge and consent of Goodman constituted a constructive fraud upon Goodman, and this, coupled with the very great inadequacy of price, was sufficient to warrant the setting aside of the sale. This is especially true when it is considered that the beneficiary was the purchaser, the premises were still in her hands, and Goodman had promptly sought to set aside the sale, and offered to do complete equity. It is not an answer to the relief sought by Goodman to say that the trustee was guilty of no positive fraud against Goodman. This does not meet the issue at all. Having been selected by the parties as trustee, Jones became the agent of both parties. He was as much the representative of Goodman as Mrs. Thornton. In law he had no right to accept an employment from the beneficiary, which it must be conceded was not altogether compatible with the rights and interests of the mortgagor. He certainly could not be regarded as still occupying an unbiased and impartial attitude towards the mortgagor and beneficiary alike. By his acceptance of employment from the beneficiary with respect to the subject-matter of his trust he became disqualified to act as trustee in making sale, and the sale made by him in the instant case should be avoided. We shall not undertake to discuss the different principles of law and authorities discussed by appellants. It is, of course, well settled in this state that mere interest in the debt secured does not disqualify a trustee from acting as such, and that a mortgagee with power of sale may purchase at his own sale. We also regard those authorities to correctly state the law which hold that a lawyer, agent or employé of the beneficiary, is qualified to act as a trustee in a deed of trust; but they are inapplicable to the facts here presented. We have been unable to find an authority directly in point in this case, and, in support generally of the views expressed, see Nabours v. McCord, 97 Tex. 526, 80 S. W. 595; Id., 100 Tex. 456, 100 S. W. 1152; Id., 101 Tex. 494, 109 S. W. 913, 111 S. W. 144; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Irion v. Yell, 132 S. W. 69; Parks v. Worthington, 101 Tex. 505, 109 S. W. 909; Smith v. Downey, 38 Colo. 165, 88 Pac. 159; Herbert v. Bryan (Cal.) 68 Pac. 1020; In re Mayfield, 17 Mo. App. 684; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390; Dyer v. Shurtleff, 112 Mass. 165, 17 Am. Rep. 77; 28 Am. & Eng. Enc. 764; 27 Cyc. 474–486; note in 19 Am. St. Rep. 289, 290.

Before passing from this point, we desire

to testify to the high regard which this court has for the personal and professional integrity of the trustee, Jones. It is quite inconceivable to us that he should have been guilty of any intentional impropriety or actual fraud in the premises, and our holding in this case is not to be construed as any reflection upon him or his firm. The grounds of our decision exclude such an hypothesis.

[2] The court did not err in taxing costs against appellants. No question was made concerning the sufficiency of the tender of payment made by appellee. R. S. art. 2035.

[3] The following allegations appear in plaintiff's petition:

"Plaintiff says that on or about the —— day of August, 1914, his brother, Sam Goodman, in the city of El Paso, Texas, was taken severely ill, and on that account it became necessary for plaintiff to take his said sick brother from the city of El Paso, and go with him to Rochester, Minn., to undergo a serious surgical operation, to attend to the bedside of such relative, where he, plaintiff, was detained until the 1st day of November, 1914, the said relative having recovered so as to be out of danger. * * * Plaintiff says that he has a residence in El Paso, and his family and his wife resided in El Paso, which facts were well known to the defendants and the said G. L. & Atlas Jones, and had a telephone at his home, where his wife could be reached at any minute in the day, and his residence in El Paso was well known to defendants and to their said attorneys and to the post office authorities, and not only this, but he had a brother, Joe Goodman, engaged in the wholesale mercantile business in the city of El Paso, and who had been engaged and was well known in said city for several years, and who was known to be friendly to plaintiff and interested in plaintiff's financial success, and yet, notwithstanding all these facts, known to defendants and said trustee, * * *."

Exceptions were addressed to these allegations upon the ground that they were irrelevant and immaterial, and raised no issue in the case, and tended to prejudice and bias the jury against appellants. The overruling of these assignments is assigned as error. The error, if any, in so doing was harmless. Rule 62a (149 S. W. x).

The tenth and fourteenth assignments are disposed of by what has heretofore been said.

[4] Error is assigned to the submission of this issue:

"Do you find from a preponderance of the evidence that at all times prior to the sale of the property in controversy by the trustee, Atlas Jones, the plaintiff, Louis Goodman, was unaware that said trustee had advertised or was threatening to advertise the property, in controversy for sale?"

Which was answered, "Yes." It is objected that it was immaterial whether Goodman knew or did not know that his property was advertised for sale. This error, if any, was harmless. The case having been submitted upon special issues, it is not apparent how the submission of this issue could have in any wise influenced the finding of the jury upon the controlling and main issues in the case. The same is true of the assignment which complains of the submission of this issue:

185 S.W.—59

"Did Atlas Jones use reasonable efforts to make the property in controversy bring the highest price at the trustee's sale?"

Which issue was answered by the jury, "No."

The thirteenth assignment is disposed of by the requirement hereinafter indicated with reference to remittitur.

[5] The fifteenth assignment complains of the refusal of the court to permit defendants to amend their answer, so as to make the same contain, in lieu of the admission "that defendants placed said note in the hands of G. L. & Atlas Jones as attorneys for collection" the following admission:

"That G. L. & Atlas Jones understood that said note was placed in their hands by defendants for collection, and that they undertook to collect the same as attorneys up to October 10, 1914"

—said amendment being requested for the purpose of making the pleadings conform to the truth and facts, as shown by the evidence introduced upon the trial of the cause. This motion was made after the evidence in the case had all been submitted, and, coming at this time, the refusal of the court to permit the amendment was a matter within his discretion, and will not be here revised. Furthermore it may be said that it does not appear to us that the amendment was in any wise material. The legal effect and consequences of the two admissions, it seems, is the same.

[6] It is assigned as error that the finding of the jury that the property in question was worth $5,800 is excessive to the extent of at least $1,000. A sale for $1,000 would be a very inadequate price, whether the property was worth $4,800 or $5,800.

It is also assigned that the jury's finding that the rental value of the property from November 3, 1914, to the date of the trial, was $885.50, is excessive. This assignment is sustained. The evidence does not justify a finding of this amount. It is admitted, however, the defendant had received as rentals the sum of $593.10, and a remittitur reducing recovery for rents to this sum would cure any error in this respect. If, within 15 days from this date, the appellees shall file a remittitur reducing to $593.10 the amount of their recovery for rents, then the judgment will be modified and affirmed. If such remittitur be not filed, the judgment of the lower court will be affirmed, in so far as concerns the recovery by appellees of the title and possession of the premises in controversy, and that branch of the case relating to the rentals will be reversed and remanded for retrial; such issue of rents being severable from the issue of title.

### On Rehearing.

Upon consideration of appellee's motion for rehearing, it is apparent we erred in requiring a remittitur reducing to $593.10 the amount of his recovery for rents. From the date of dispossession by appellants to date

of verdict and judgment (November 3, 1914, to October 22, 1915) is 11 months and 19 days. Goodman testified that the rental value of the property was $80 to $85 per month. His testimony upon this phase of the case is amply corroborated by disinterested witnesses. It is thus quite apparent that the allowance of $885.50 for rents was not excessive. Our error was occasioned by a miscalculation which the writer made of the time intervening between the date of dispossession and the date verdict was returned and the judgment rendered.

[7] The appellants' thirteenth assignment complains of the refusal to submit this issue, viz.:

"How much rent do you find that defendants have received from the property, and for what period of time was such rent received?"

The proper measure of appellee's damage for the unlawful detention of the premises was the fair cash rental value of the property during the period of detention, and the court, therefore, did not err in refusing to submit the issue indicated. What has been here said disposes of all assignments relating to this phase of the case.

Appellants' motion for rehearing is overruled. Appellee's motion is granted, the order requiring a remittitur, heretofore entered as a condition of affirmance, is set aside, and the judgment of the court below is in all things affirmed.