This litigation grows out of the case of Roper v. Insurance Co.,161 N.C. 151. In the present action the judge restrained the defendants from completing the sale of certain lands referred to in the pleadings.
From the pleadings and affidavits in the record these facts appear:
On 26 November, 1908, C. E. Roper and wife executed to A. L. Holmes a deed of trust to secure $3,200 and interest, the land included in the conveyance being a boundary of about 300 acres situated near Hendersonville. The grantors subsequently built a hotel on one of the lots included in the boundary, and gave other mortgages and deeds of trust upon the same property.
On 6 May, 1910, C. E. Roper individually, and as executor of his wife, executed a deed of trust upon the same property to Smith as trustee for J. M. Stepp, and thereafter procured a fire insurance (290) policy on the hotel to be written by the plaintiff, the National Fire Insurance Company, with a standard mortgage clause payable to J. M. Stepp.
Thereafter the hotel was destroyed by fire, and the National Fire Insurance Company, in obedience to a decree of this Court at its last term, paid the amount due on the mortgage, with interest, to G. H. Valentine, trustee in bankruptcy for J. M. Stepp, and took an assignment of the said deed of trust. That subsequent to the execution of the Stepp deed of trust in 1910, several parties filed liens against C. E. Roper for materials furnished in the construction of his hotel. Subsequently, judgments were taken thereon.
That R. C. Clark was one of these junior judgment holders, having purchased the hotel tract at a sheriff's sale under one of these judgments, known as the Loenhardt and Garren judgment, for the sum of $265, and took the deed therefor.
Thereafter, in order to forestall the rights of the National Fire Insurance Company as assignee of the Stepp mortgage, Clark caused an insolvent clerk in his employ, M. Toms Pace, to purchase for him the Holmes mortgage of $3,200, and interest, and take an assignment of the said mortgage to the said M. Toms Pace as assignee and trustee for Clark.
Following this up, Clark requested Pace, assignee of the Holmes mortgage, to advertise the Roper lands for sale on 14 February, 1913, and engaged K. G. Morris to attend the sale as his agent and bid for the land, with the understanding between himself and M. Toms Pace at the time that it was to be sold in separate lots.
On the day of the sale plaintiffs offered to pay to Pace the entire amount of his mortgage, interest, costs, and expenses, and take an assignment of the mortgage without prejudice to await a settlement of the *Page 238 
equities between the parties. this was declined. The plaintiffs then requested that the land be sold en masse. This was refused. Immediately after the last lot of land was knocked down to K. G. Morris, he having purchased it all, as per agreement, at the price of $394, the plaintiffs offered $4,000. This bid was declined.
The following notice in writing was read by plaintiffs at and (291) immediately preceding the sale:
Notice to all bidders and prospective purchasers: Representing a mortgage creditor who holds a deed of trust upon the property included in the advertisement of this sale, I have offered, and do here and now offer to pay to A. L. Holmes or his assignee or attorney all the principal, interest, cost, and taxes due him or them, and for which he or they are liable to account at this sale, if he or his representatives will assign the said mortgage to me, to be held without prejudice to await the settlement of the equities, by the court, of subsequent creditors to this mortgage. This has been refused.
I demand that A. L. Holmes and his representatives conducting this sale shall offer all the property included in his mortgage for sale en masse, so that the largest possible amount may be obtained from this sale, satisfying his mortgage and providing, if possible, other funds to be distributed among the junior creditors of C. E. Roper, executor of F. A. Roper, deceased, the makers of this mortgage, and against whom the junior liabilities exist. ROBERT G. HAYES.
It appears from the affidavits that the land is worth $7,000 to $8,000, and that it was bid off for Clark at $394.
It does not appear in the record that Holmes, the original trustee in the deed in trust, executed a formal deed to Pace, conveying the land subject to the trusts and with the consent of the cestui que trust. As the record appears, he merely assigned the papers to Pace.
However that may be, we think that his Honor committed no error in continuing the injunction, restraining the making of deeds and passing the title to Clark upon the facts disclosed in the record.
It clearly appears that Pace was the trustee and personal agent of Clark, who had purchased several of the mortgages and the liens filed upon this property, and that he sold the property for Clark and to Clark, through another agent, at a price which as stated by this (292) Court in a former case, is calculated to cause the bystanders to exclaim that he got the property for nothing.
We do not controvert the proposition, supported by abundant authority, that the owner of a debt secured in a deed in trust made to a third *Page 239 
party as trustee with power of sale, may lawfully bid and purchase at the sale, where there is no allegation or evidence of fraud or collusion between the creditor and the trustee. Monroe v. Fuchtler, 121 N.C. 101.
There is a difference between an assignment of a mortgage and the substitution of another trustee in a deed in trust by all the parties interested in it.
A mere assignment of a mortgage in terms which do not profess to act upon the land does not pass the mortgagee's estate in the land, but only the security it affords to the holder of the debt. Williams v. Teachey,85 N.C. 403.
But whatever may be the form of the assignment by Holmes to Pace, the evidence of collusion between Pace and Clark is plenary, and a sale conducted under such circumstances, even by a legal trustee, would not be permitted to stand by a court of equity.
There is no question that a court of equity has power to vacate a foreclosure sale which is shown to be tainted with fraud or deceit, or to have been made in pursuance of a corrupt scheme to gain possession of the premises inequitably.
In Jones v. Pullen, 115 N.C. 471, it is said: "There is no question, according to our authorities, that if a mortgagee with power to sell indirectly purchases at his own sale, the mortgagor may elect to avoid the sale, and this without reference to its having been fairly made and for a reasonable price. This is an inflexible rule, and it is not because there is, but because there may be fraud." Gibson v. Barbour, 100 N.C. 192;Froneberger v. Lewis, 79 N.C. 426; Cole v. Stokes, 113 N.C. 270.
In Mosby v. Hodge, 76 N.C. 388, Pearson, C. J., said: "The exercise of the power is only allowed in plain cases where there is no complication and no controversy as to the amount due upon the mortgage, and the power is given merely to avoid the expense of foreclosing the mortgage by action, but that when there is such complication and controversy the court will interfere and require the foreclosure to be made under the direction of the court after all (293) the controverted matters have been adjusted and the balance due is fixed, so that the property may be brought to sale when purchasers will be assured of a title, and not to be deterred by the idea that they are buying a lawsuit."
This case is cited with approval in Menzel v. Hinton, 132 N.C. 670.
Merrimon, C. J., in Gooch v. Vaughan, 92 N.C. 615, says: "Courts regard such powers with suspicion and watchfulness, and never fail to *Page 240 
scrutinize the exercise of them when it appears that there is ground to apprehend that injustice in any respect is done or about to be done to the mortgagor. The mortgagor is, in an important sense, completely in the power of the mortgagee, and besides, the latter is a trustee, first, to control the property and apply the proceeds of it when sold to the payment of the mortgage debt, and, second, for the mortgagor as to any surplus, and he is held to a strict account."
The junior mortgagee or lien creditor will be protected by the courts to the same extent as the mortgagor.
In 27 Cyc., 1713, it is said: "And where the fraud takes the form of causing the sale to be made for a larger sum than is due, or collusion between the mortgagee and the purchaser, to the injury of the mortgagor's rights, or of misrepresentation and deceit, practiced upon the purchaser, or upon a junior lien creditor, the sale may be set aside."
The books are full of cases where courts of equity have interfered to guard the rights of mortgagors, junior mortgagees, and lien creditors with jealous care, and have set aside sales made by mortgagees and trustees where manifest wrong and oppression are made to appear.
The affidavits not only show abundant evidence of collusion, and that Pace was Clark's agent, acting for him and under his control, but it appears further that the advertisement of sale mentioned no hour when the sale was to take place.
In 27 Cyc., 469, the rule with respect to the time and place of sale is stated as follows: "The notice must specify the place at which the sale will be held with a degree of certainty that intending bidders will not be misled, but will be able to find it, and it must also give the time of the sale with equal certainty, stating not only the (294) day, but also the hour at which it will be held." Fitzpatrick v. Fitzpatrick, 75 Am. Dec., 681.
The omission of such an essential requisite to make a valid sale is strong evidence of a fraudulent purpose to deceive and mislead probable bidders.
This fact alone is sufficient to justify the judge in continuing the injunction, and if it be shown at the final hearing that no time of sale was given in the advertisements, the sale should be set aside.
It is a familiar principle of equity jurisprudence that the status of the parties should be preserved pending a trial upon the merits.
The order continuing the injunction is
Affirmed. *Page 241