## BOND et al. v. STEPHENS et al.

RUSSELL, C. J.   1. Where a debtor, to secure a certain debt, has conveyed certain real estate subject to an outstanding security deed, and in the deed has conferred a power of sale upon the grantee, and there is an attempt to sell the equity of redemption in pursuance of the power of sale, although the debtor of course may complain that the sale was not had in compliance with the stipulations contained in the security deed, a junior general judgment creditor of the grantor has such an interest in having the equitable interest of the grantor bringing the highest possible price as that he also may be heard upon the point as to

whether the sale was had in compliance with the power contained in the security deed, and to show, if he can, that the failure to properly execute the power of sale conferred by the grantor has resulted in his injury.

2. A so-called public sale, where the seller or the auctioneer places himself twelve feet within an entrance of a court-house, and the only bidder stands within the same distance from the door of the court-house, and neither of them can be seen by persons upon the adjoining streets or in the court-yard, and the sale, including the reading of the advertisement and the taking of bids, is concluded in about a minute, there being only one bidder and one other person present at the time of the sale, and there is no reading of the advertisement other than in a monotone not loud enough to attract the attention of any person except the two who are in the corridor of the court-house, and where only one bid is offered and no request is made for further bids, but the property is knocked off without delay to the maker of the single bid, when there are no persons other than those mentioned in the court-house or on the court-yard, can not be said to be a sale at public outcry within the meaning of that term.

3. Applying the principles stated in the foregoing headnotes, the court erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed. All the Justices concur.*

No. 4569. SEPTEMBER 22, 1925. REHEARING DENIED OCTOBER 3, 1925.

Equitable petition. Before Judge Yeomans. Early superior court. October 10, 1924.

A. J. Bond and J. W. Bond filed an equitable petition against James A. Stephens and S. P. Holland, both residents of Early County, and Taft and Company, a corporation of the State of Illinois, asking that a sale of certain real estate, which had been made by virtue of a power of sale, be set aside and annulled. On August 19, 1924, an order was passed providing for service by publication on the non-resident corporation, and on October 9, 1924, during the October term of said court, an order was passed declaring that service by publication had been duly perfected on the non-resident corporation. Stephens and Holland were served, and on October 3, 1924, each filed separate demurrers to the plaintiff's petition. On October 9 the demurrers were heard, and on the following day the plaintiffs offered an amendment to the petition, which was allowed and filed. The demurrers filed by Stephens and by Holland were sustained and the case dismissed as to these defendants. Exception was taken to this judgment.

As appears from the statements of the petition, which for the purpose of demurrer must be taken to be true, Stephens owned a plantation in Miller County, containing something over 621 acres

of land, described in the petition, and on September 5, 1918, borrowed $8,000 from the Pearsons-Taft Land Credit Company, delivering to that corporation his note for $8,000, due February 1, 1929, with interest from date at the rate of 6 per cent. per annum. On the same day Stephens also executed and delivered to said corporation a second security deed conveying the same land to secure the payment of his notes to it for $1,500.45, payable $60.45 February 1, 1919, and $160 on February 1 of each succeeding year until the note should be paid in full, with the provision that upon default in payment of any of the installments all of the unpaid installments might become at once due and payable. Both deeds were recorded on September 18, 1918. Three years later, on October 4, 1921, the plaintiffs in error obtained a judgment against Stephens for $3,000 principal, besides interest and costs, and execution issued on March 24, 1923. On April 3, 1923, the plaintiffs in error obtained a second judgment on which execution duly issued for $500 principal and costs. On February 1, 1924, Stephens made default in the payment of the installment on the $1,500.45 note then falling due, and the company elected to exercise its option of declaring immediately due and payable all unpaid installments on said note for $1,500.45, and proceeded on May 21 to advertise the described lands for sale under the power of sale provided in the security deed. The date fixed for the sale in pursuance of the power was June 17, 1924, and the land was advertised to be sold, subject to the rights of the holder of the $8,000 note secured by the first security deed, to the highest bidder for cash, at the door of the court-house in Colquitt, Georgia, between the hours of ten a. m. and four p. m. The land was sold on June 17, 1924, at about ten minutes after twelve o'clock noon, and was bid in by S. P. Holland. A. J. Bond, one of the plaintiffs in error, went to Colquitt on the day of the sale, with $5,000 cash, prepared to bid on the interest of Stephens in the land advertised for sale, and employed an attorney to be present at the sale and represent the interests of the plaintiffs in error as judgment creditors of Stephens. Bond and his attorney went to the court-house at ten o'clock and stayed there awaiting the proposed sale until twelve o'clock, when they went to dinner, and a few minutes thereafter, one McLean, as attorney in fact for Taft & Company, sold the equity of Stephens in the land to Holland for $840, delivering him a deed to that

effect. It is this sale that the plaintiffs sought to set aside upon the ground of fraud, collusion, and failure to comply with the terms of the sale as prescribed in the power of sale as conferred by Stephens in the security deed.

It is alleged in the petition: "At 12:10 o'clock p. m. of that day, Leslie A. McLean, of Macon, Georgia, to whom said Taft & Company had given a power of attorney authorizing him to conduct said advertised sale in its behalf, visited the court-house, accompanied by the said S. P. Holland and said attorney employed by the said Stephens, at a time when all of the county officials had left the court-house for dinner, and there was no one inside the building, nor outside of it within the court-house yard, with the exception of I. B. Bush, a justice of the peace of Miller County, who occupied an office in the building on the first floor. No public announcement of any kind was made by the said McLean, or by any one else, of his purpose to then put up said lands at public sale, but said attorney of the said Stephens stepped into the office of said justice of the peace and requested him to come out into the corridor of the building as a witness to a sale of the lands in his presence inside of the building. In compliance with this request, the said Bush stepped into the corridor of the court-house extending from north to south through the center of the building, and then and there witnessed a private sale of the land to the said S. P. Holland, made under the following circumstances by said agent of Taft & Company: The said Holland stood with his back against the western wall of the corridor, some twelve feet or more south of the northern entrance to the building, in such position as not to attract the attentiton of any casual passer by, or to be seen by persons across the street. The attorney of the said Stephens stood at an equal or greater distance from said doorway, on the opposite side of the corridor, at the bottom of the stairway leading to the upper story of the building, and in such position as likewise not to attract the attention of any one outside of the building or to be seen by persons across the street. The said McLean stood within a distance of six feet from said open doorway, in a recess under said stairway, on the eastern side of said corridor, with his back towards the northern wall of the building, so as to be entirely out of view of persons across the street or passing through the court-house yard in front of said northern entrance to the building. As

the said Bush appeared upon the scene, the said McLean was in the act of reading, in a low tone of voice, said published notice, which he hurriedly continued to read to its end in the same monotone, and then, without raising his voice, addressed the said Holland as follows: 'What am I offered for this property?' The said Holland quickly responded: 'Eight hundred and seventy dollars;' whereupon the said McLean, without further crying the property for sale, formally announced that, such being the highest and only bid made on the property, it was knocked off to the said Holland at that price. Said pretended public sale, made under the foregoing circumstances, occupied no more than one minute of time, and the aforesaid participants therein at once thereafter left the court-house together."

It is alleged in the petition that prior to the sale day the deed delivered to Holland, reciting the precise consideration named therein, was forwarded to said attorney in fact for the company, Leslie A. McLean, already executed in Cook County, Illinois, by Taft & Company acting as attorney in fact for Stephens. In a few minutes after the sale the attorney for plaintiffs and A. J. Bond returned to the court-house, and, having learned that there had been a sale, endeavored to get McLean, the attorney in fact of Taft & Company, to resell the property, offering Holland to repay him the amount of his purchase; but both McLean and Holland refused to do anything, the latter stating that he had bought the property for investment. It is alleged, that by long and universal custom all sheriff's sales at public outcry in Miller County are expected to take place outside of the court-house, before the northern entrance, the auctioneer standing in plain view before the court-house door and summoning a crowd to appear and attend the sale before offering the property for sale; that it is customary for parties to go to dinner at twelve o'clock, and altogether unprecedented for sales to be resumed before one o'clock; that Holland, the attorney in fact for Taft & Company, and an attorney representing Stephens purposely concealed themselves until everybody had left the court-house and gone to dinner; and that one McCullars, a brother-in-law of Stephens, kept watch at the court-house for the purpose of ascertaining when everybody had left, and then apprised these parties of this fact, and McLean thereupon had the sale as already stated. The prayers of the petition were,

that the sale be set aside as a fraud upon petitioners; that the equity in said lands be resold at public outcry under decree of the court by a commissioner; that Holland be paid the amount of his bid, together with legal interest, and the excess of the proceeds over and above this payment and the expenses of the sale be paid to petitioners to be credited upon their judgments; that the conveyance made to Holland be canceled; that they have other and further relief, etc.; and that, if for any reason the court could not grant the specific relief prayed, the petitioners be allowed to recover damages.

*P. D. Rich* and *C. L. Glessner,* for plaintiffs.

*A. H. Gray,* for defendants.