**HART et al. v. ESTELLE et al.**

No. 7502.

Court of Civil Appeals of Texas. Austin.

Dec. 23, 1930.

Appellant's Motion for Rehearing Overruled Jan. 7, 1931.

Appellee Bank's Motion for Rehearing Overruled Jan. 14, 1931.

Appellees Estelle's Motion for Rehearing Overruled Jan. 21, 1931.

Jas. P. Alexander, of Waco, and Henderson, Kidd, & Henderson, of Cameron, for appellants.

E. A. Wallace, of Cameron, for Appellee First Nat. Bank of Cameron.

W. A. Morrison, of Cameron, for appellees L. C. Estelle, Jr., and others.

McCLENDON, C. J.

This suit was to foreclose two abstract of judgment liens in favor of appellants, Mrs. Hart and Mrs. Allen, against L. C. Estelle, upon two parcels of real estate in Milam county, which will be designated, respectively, Mitchell tract and Atkinson tract. The issues as to each tract are entirely separate and will be so treated in this opinion. As to the Mitchell tract, the issues involve the validity of a sale by a substitute trustee under a trust deed. Those as to the Atkinson tract will be stated later. The suit was originally brought by Mrs. Hart, Mrs. Allen being made a party defendant. However, the rights of each are identical, and they are appellants under a joint appeal bond. The trial was to a jury upon special issues, and the judgment (which as to the Mitchell tract was upon a directed verdict) denied recovery to both appellants.

In broad outline, the facts with reference to the Mitchell tract are: L. C. Estelle, to whom we will refer as Estelle, owned the tract in his separate right. October 28, 1926, he executed a trust deed to Gillis, trustee, to secure a $3,000 note in favor of Mrs. Mitchell. This instrument authorized Mrs. Mitchell to sell at the request of Gillis. Abstracts of the Hart and Allen judgments were properly recorded and indexed May 12, 1928, in Milam county records. Later the First National Bank of Cameron, to which we will refer as the bank, brought suit against Estelle, and on January 3, 1929, had an attachment levied upon the property. That suit resulted in a judgment against Estelle for about $1,400 and foreclosure of the attachment lien. July 5, 1929, the bank procured McIntosh, one of its directors, to purchase the Mitchell note and lien, and obtained from Gillis a refusal to act as trustee, appointed Wallace substitute trustee, who advertised the property for sale on August 6, 1929. At the sale McIntosh, the only bidder, bought in the property for $3,750, and credited the amount of the bid upon the debt and expenses of sale. Trustee's deed was executed to him, and he thereupon conveyed to the bank. This suit was brought February 29, 1929, by Mrs. Hart as plaintiff against L. C. Estelle, L. C. Estelle, Jr., John R. Estelle, the bank, and Mrs. Allen. L. C. Estelle, Jr., and John R. Estelle are sons of L. C. Estelle, and their interest in the litigation is confined exclusively to the Atkinson tract. August 6, 1929, immediately after the trustee's sale, Mrs. Hart amended her petition, making McIntosh and Mrs. Fannie Estelle, wife of L. C. Estelle, parties defendant, alleging want of power in Wallace to make the sale, and a fraudulent conspiracy between Wallace, McIntosh, the bank, and Estelle, to defeat the abstract of judgment lien. The invalidity of the sale is predicated upon substantially the following propositions:

1. Only Mrs. Mitchell was authorized under the deed of trust to make the sale.

2. The sale must have been at the request of Gillis, or a duly constituted substitute trustee.

3. Gillis did not in fact refuse or become disqualified to act, but was requested and induced to do so by McIntosh.

4. The substitute trustee was not appointed by Mrs. Mitchell, as required by the trust deed.

5. The trustee's sale was fraudulent, in that Wallace, McIntosh, Estelle, and the bank concealed from appellants an alleged ratification of Wallace's appointment and acts by Mrs. Mitchell and Estelle, which concealment deterred appellants and others from bidding at the sale, and prevented a bid at an adequate price for the property.

The bank, while contesting each of the above propositions, contends further that the issue of fraud was not raised by the evidence, and that the other grounds of invalidity of the trustee's sale were not available to the holders of abstract of judgment liens, but only to Mrs. Mitchell and Estelle, who subsequently to the notice of sale ratified the acts of the substitute trustee; and that appellants waived any objection to the sale by failing to redeem by paying off the trust deed lien.

The record shows the following with reference to these issues: The pertinent portions of the deed of trust were:

"But, in case of failure or default in the payment of said promissory note together with the interest thereon accrued, according to its terms and face, at the maturity of the same, then, in such event, said Mrs. A. F. Mitchell is by these presents fully authorized and empowered, and it is made his special duty, at the request of the said W. G. Gillis, Trustee, at any time made after the maturity of said promissory note, to sell the said above described property to the highest bidder, for cash, at public outcry, in front of the Court House door of said Milam County, on the first Tuesday of any month, between the hours of 10 o'clock a. m. and 4 o'clock p. m. first giving notice of the time, place and terms of sale for at least twenty days successively next before the day of sale, by posting up written or printed notices of such sale at three public places in the County of Milam, State of Texas, one of which shall be at the court house door of said County, and by giving such other notice as is or may be required by law, and after said sale, as aforesaid, to make to the purchaser or purchasers thereof a good and sufficient deed in law to the property so sold, with the usual covenants and warrants, and to receive the proceeds of said

sale, and the same to apply to the payment of said note, the interest thereot accrued, and the expense ot executing said trust, including five per cent. commission to said Trustee, holding the remainder thereof subject to the order of them the said L. C. Estelle and Fannie Estelle.

"It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed; and it is hereby specially provided that should the said W. G. Gillis, Trustee, from any cause whatever, fail or refuse to act, or become disqualified from acting as such Trustee, then the said Mrs. A. F. Mitchell shall have full power to appoint a substitute, in writing, who shall have the same powers as are hereby delegated to the said W. G. Gillis, Trustee, and does by these presents fully and absolutely ratify and confirm any and all acts which the said W. G. Gillis, Trustee, or his substitute as herein provided, may do in the premises by virtue hereof." ·

Negotiations for the acquisition of the Mitchell note and lien were conducted between Wallace, attorney for the bank, and Chambers, law partner of Gillis, attorneys for Mrs. Mitchell, Gillis being away at the time. In these negotiations it was agreed between Chambers and Wallace that Gillis would refuse to act as trustee; the only controversy in this regard being as to the reasons for such refusal. Chambers testified that Wallace stated that his client would like to save the commissions of the trustee, and asked if Gillis would be willing to refuse to act in case his client acquired the note and lien, to which Chambers assented. Wallace testified that the agreement was based upon the fact that the names of Mrs. Mitchell and Gillis were by clerical error transposed in the trust deed, and he concluded that the irregularity might be cured by the refusal of Gillis and the appointment of a substitute trustee. We do not regard this conflict in the testimony as important. However, in view of the directed verdict, we adopt the version of Chambers. There is no conflict on the point that the agreement was that Gillis should refuse to act. After Gillis returned, Wallace prepared a formal request (signed by McIntosh) to Gillis, requesting him to sell the property under the provisions of the trust deed, following it in the same instrument by a formal refusal to be signed by Gillis. This instrument Wallace sent to Gillis by Wallace's stenographer, and Gillis signed and acknowledged it, after ascertaining from Chambers the terms of the agreement under which the note was sold to McIntosh. Gillis testified that no request of any character was made of him to make the sale further than the presentation of the above instrument under the circumstances detailed, and that he would have been willing to sell the property under the trust deed had a bona fide request been made of him by McIntosh to do so. The evidence clearly supports a finding that no such request was made, and that there was no actual refusal on the part of Gillis to act.

The notice of sale does not appear in the record; but the trustee's deed to McIntosh recites the transfer of the note and lien to McIntosh; request by "holder of said note" to Gillis to execute the trust; Gillis's declination to act; that the "owners and holders of said note" appointed Wallace substitute trustee and requested him to execute the trust; and that on July 10, 1929, he advertised the property for sale on Tuesday, August 6, 1929. An instrument was executed by McIntosh, Mrs. Mitchell and husband appointing Wallace substitute trustee, which bore date July 9, 1929, and was signed and acknowledged by McIntosh on that date; however, it was not presented to or signed by the Mitchells until August 1, 1929, and was kept in their possession until August 10, 1929, when it was acknowledged by them and delivered to Wallace. Another instrument was signed by Mrs. Mitchell and husband on August 1, 1929, and acknowledged and delivered to Wallace on August 10, 1929, which recited that they were not in the state on July 8, 1929, and for several days following, and were not accessible to McIntosh in order for him to request the execution of the trust, and they thereupon ratified and confirmed the acts of McIntosh in appointing Wallace substitute trustee, and that Mrs. Mitchell expressly declined to sell the land or enforce the trust deed. Shortly after the notices of sale were posted, Henderson, attorney for appellants, had a conference with Wallace, with a view of preventing the sale, and having a judicial foreclosure. In this conference, Henderson took the position that the sale would be invalid and his clients would not be willing to purchase under the circumstances, and that a fair price could not be obtained for the property. Wallace declined to postpone the sale, and a temporary injunction was sought and hearing thereon had on Saturday, August 3, before the district judge at Cameron. The facts with reference to the claimed invalidity of the sale by substitute trustee were urged in this application. A general demurrer to the application was sustained by the district judge. Henderson testified that the time was so short between the hearing and the sale that he was unable to take an appeal; and after the sale the application for temporary injunction was dismissed because the question involved had become moot. Wallace testified that he had a conference with Estelle and his attorneys, Thomas and Morrison, after the notices of sale were posted and prior to the injunction proceeding, in which Estelle agreed

to waive any irregularity in the sale. Estelle, however, did not execute any written waiver, and Morrison, as attorney for Estelle, announced at the sale and before any bidding that his client reserved the right to set aside the sale for irregularities and invalidity. The fact that the Mitchells had signed the above instruments on August 1st, and that Estelle had agreed to waive the irregularities in the proceeding, were not made known to Henderson until after the sale. Wallace testified in this regard that he purposely withheld said information, as he was representing the bank; and to quote his own language: "I certainly did not tell the court (at the injunction hearing), nor you, (Henderson), nor anybody else that McIntosh, or the bank, proposed to get any ratification to them, or to do anything to remedy the defect in the procedure nor this deed of trust; I was representing the other folks and I was not going around displaying my hand. No, sir, I did not inform you up to the time of the sale that I had got it or was going to get it."

Averitt, an official "in charge of the actual collections and legal processes of the bank on that date," frankly admitted on cross-examination that the Mitchell note was taken in the name of McIntosh in order to prevent its being drawn into this suit, and that "the purpose of the bank was to get hold of this property before the other lien of Mrs. Hart and Mrs. Allen and secure for themselves the equity in the property over and above the Mitchell debt."

After the sale Wallace endeavored to obtain a written waiver from Estelle, and, in the negotiations with Morrison, the latter interposed an objection on the ground that the bank had levied upon certain diamonds which had been deposited with the bank by Estelle, and which Morrison claimed to belong to Estelle's sons. These negotiations resulted in the execution of a waiver by Estelle, which bore date August 1, 1929, but which was not in fact signed until August 20, 1929, the real consideration being that the bank released the diamonds from its execution. Three witnesses testified to the value of the property: Two real estate agents (offered by appellants), who testified that it was worth $6,000; and Mitchell (offered by the bank), who had lived in one of the residences on the property as a tenant for some time, and who testified that it was worth from $5,500 to $6,000.

The bank contends that there was a clerical error of the scrivener in transcribing the trust deed, in that by mistake he inserted the name of Mrs. Mitchell where he should have inserted that of Gillis, and vice versa, and that this appears from the face of the instrument itself. We do not concur in this view. While it may appear very probable, it is by no means certain that such was the case. The trust deed was not upon the usual or standard form, and we would have to resort to surmise to conclude that Estelle did not intend to confer the power of sale upon Mrs. Mitchell alone, to be exercised at the request of Gillis, or a substitute trustee, in case he should refuse to act. Unless there were a mistake so palpable that we could say conclusively as a matter of law from the face of the instrument itself that it had been made (see 11 C. J., p. 839, note 60), then, before it could be rectified, the instrument would have to be reformed in a proper proceeding brought for that purpose. In the absence of such proceeding, the power could not properly be exercised, except in the manner expressly provided in the instrument. For a somewhat analogous situation, see Humble Co. v. Davis (Tex. Civ. App.) 282 S. W. 930. We hold the sale invalid for each of the following reasons:

1. The trust deed conferred the power only on Mrs. Mitchell to sell, and it could not lawfully be exercised by any one else. Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59; Boone v. Miller, 86 Tex. 74, 23 S. W. 574; Wilson v. Armstrong (Tex. Civ. App.) 236 S. W. 755, and authorities there collated at page 757, column 1.

2. The sale must have been at the request of Gillis, unless he in fact refused to act. Boone v. Miller, supra; Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070; Bomar v. West, 87 Tex. 299, 28 S. W. 519; Bowman v. Oakley (Tex. Civ. App.) 212 S. W. 549.

3. The appointment of Wallace was unauthorized, since Gillis did not in fact refuse to act. The recitals in the trustee's deed were only prima facie evidence thereof, and no rights of bona fide purchasers are involved. Bowman v. Oakley, supra, and authorities there cited.

4. Concealment by the trustee of the facts relative to ratification and waiver by Mrs. Mitchell and Estelle, coupled with the inadequate price for which the property sold, authorized setting the sale aside; and this independently of whether such concealment amounted to legal fraud. Gandy v. Bank (Tex. Civ. App.) 2 S.W.(2d) 971 (error refused).

Regardless of whether the sale was void or voidable, we hold that appellants, as junior lienholders, could take advantage of the invalidity of the sale. This was a direct proceeding brought to set aside the sale and to have the property resold under court order. It may be conceded that such provisions of the deed of trust as were solely for the benefit of the grantor therein might by him be waived, and noncompliance therewith could not be urged by junior lienholders. The latter, however, had a direct interest in a sale so conducted as to realize full value of the property. A sale subject to attack by

the grantor in the trust deed, and at which the grantor publicly announced he reserved the right to contest, was certainly calculated to deter bidders, and, according to Henderson's testimony, had the effect of preventing his clients from bidding as they did not want to buy a lawsuit. While the evidence might have been sufficient to estop Estelle from questioning the sale, still the facts constituting such estoppel rested in parol, were not of record, and were not known to appellants or their attorney, or to any one other than Wallace, Estelle, and his attorneys, so far as the record shows. In support of its contention that only Estelle could question the validity of the sale, the bank cites Walker v. Taylor (Tex. Civ. App.) 142 S. W. 31; Buvens v. Brown, 118 Tex. 551, 18 S.W.(2d) 1057. In the first of these cases it was held by the San Antonio Court of Civil Appeals that a junior lienholder could not question the validity of a trustee's sale on the ground that the trustee himself had not posted the notices of sale, but had caused such posting by his agent; the holding being that only the grantor could raise such question, since the notices of sale were for his benefit alone. The point, however, was not necessary to the decision, for the reason that it was further held that the posting of the notices was a purely ministerial act, and it was immaterial whether the trustee performed such act in person or by a representative, so long as it was under his authority; a holding which is manifestly sound and which settled the case. We are not in accord with the view that notices of sale are solely for the benefit of the maker of the trust deed. That is of course true at the time the deed is executed; but the purpose of the notice is to give publicity to the sale in order that the property may bring a fair price; and when the rights of other parties have intervened who become interested in the property bringing a fair price, they have a direct interest in a proper advertisement of the sale. But, however that may be with reference to posting the notices, we are clear in the view that appellants can urge each of the above grounds of invalidity.

In the second case the question was as to the right of a stranger to the title to urge a defect in a married woman's acknowledgment, which as to her rendered the sale absolutely void. The case is not in point, since appellants are not strangers to the title, but claim under the grantor in the deed of trust as junior lienholders, and in a direct proceeding to set the sale aside.

That such junior lienholder can avail himself of the defects here involved, we think follows from the holdings in the following cases: Gandy v. Bank, supra; Hayes v. Pace, 162 N. C. 288, 78 S. E. 290; Bon v. Graves 216 Mass. 440, 103 N. E. 1023; Bond v. Stephens, 161 Ga. 140, 129 S. E. 636; 41 C. J. 1006.

The bank makes the further contention that appellants are not in position to question the sale because they made no offer or effort to redeem by paying off the trust deed lien. This contention we think is also without merit. Appellants were not in a position to redeem, since they had not acquired the equity of redemption, but were only the holders of junior liens. However, even if they had held the right to redeem, they would not have been compelled to do so in order to protect their rights. They were entitled before losing their liens to have a valid and fair sale of the property.

Upon the branch of the case involving the Atkinson tract the contest is between appellants and L. C. Estelle, Jr., and John R. Estelle, to whom we will refer as Estelle's sons. Their claim was that the property was the separate estate of their mother (who died in 1916, and from whom they inherited) by virtue of a resulting trust. They further claimed under an instrument signed by their father in 1925, which had been destroyed by fire and was ratified by instrument executed by L. C. Estelle and wife in 1929. The jury found in favor of Estelle's sons on the trust issue, and judgment was rendered for them on that finding.

The Atkinson tract was acquired in 1911 during the marriage of L. C. Estelle and his first wife, the mother of Estelle's sons. The evidence is sufficient to show that, although the title was taken in Estelle's name, the property was paid for entirely by separate funds of Mrs. Estelle. The evidence upon this point is very strong, and no rebuttal evidence was offered. Prior to announcing ready, Estelle's sons admitted the cause of action asserted by appellants, except as it might be defeated by their pleas in confessions in avoidance as above noted, in order to obtain the opening and closing in the argument, under District Court Rule 31. The only question raised in so far as the trust issue is concerned is the contention by appellants that under their pleadings it was necessary for them to show title to the property in L. C. Estelle, and therefore, under the admission by Estelle's sons of appellants' cause of action, they were entitled to judgment. We do not sustain this contention. The action was to foreclose abstract of judgment liens. Plaintiff alleged that Estelle was the owner of the Atkinson tract under deed from B. P. Atkinson et ux. to L. C. Estelle, giving its date and the volume and page where recorded; and, further, "that the defendants L. C. Estelle, Jr., John Estelle and the First National Bank of Cameron, Texas, are asserting some right, title, interest, interest lien or claim in and to said above described property, the exact nature of which is unknown to this plaintiff, but which plaintiff alleges are inferior to plaintiff's said judg-

ment lien; that they should be required to come into court and show what, if any, titles, liens, interests or claims they hold." Under these pleadings plaintiff assumed the burden only of showing that Estelle held the legal title to the property under the Atkinson deed, and Estelle's sons were required to assert by pleading and proof such title or interest as they might have in the property.

Under our statutes of descent and distribution, L. C. Estelle, as surviving husband of his first wife, inherited a life estate in a one-third undivided interest in her property; which inheritance was subject to execution and the lien of the abstracts of judgment. This appears to be conceded by Estelle's sons. They contend, however, that the interest they acquired under the 1925 instrument was an equitable one, and that, although it was not recorded and no notice thereof to appellants was shown, the lien did not attach. R. S. art. 6627, makes void, as to "all creditors," "all bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years." If the 1925 instrument comes within this language, then under the authorities the failure to record it would defeat the rights acquired under it, in the absence of a showing of notice to appellants. The testimony was that the instrument had been destroyed by fire and no copy of it preserved. Estelle and his sons, however, testified that its substance was as follows:

"Bolton—9—20—25.

"To John R. & L. C. Estelle, Jr. This is to show that the Home place in Cameron, Gardner Addition to Cameron bought of B. P. Atkinson, was bought by your mother with her own money for you boys as a home & I do not hold any of my money in to this property & I want you to know I drew $500.00 out of courts at Milam Co. Cameron, Texas, which belong to you Boys & Give to you Boys all my rights & interest in this property.

"L. C. Estelle.

"This to be put away in event anything should happen to me. This will show your rights & title to this property.

"L. C. Estelle, Jr.
"John R. Estelle.
"Mrs. Fannie Estelle."

In so far as the instrument was a recognition of the title of the first Mrs. Estelle under the resulting trust arising from the use of her separate property in its purchase, it does not fall within the above article under the holding in Johnson v. Darr, 114 Tex. 516, 272 S. W. 1098. In so far, however, as it divested the life estate inherited by Estelle from his first wife, it was clearly a conveyance of an estate in land, and therefore falls directly within the provisions of the article.

The trial court's judgment in favor of Estelle's sons is affirmed, except as to a one-third life estate in the Atkinson tract. In all other respects, the trial court's judgment is reversed and the cause remanded, with instructions to the trial court to ascertain the amounts due on the Mitchell note and abstract of judgment liens; to foreclose the deed of trust and abstract of judgment liens on the Mitchell tract and the abstract of judgment liens on the life estate in one-third interest in the Atkinson tract; to issue the proper orders of sale, applying the proceeds of the sale of the Mitchell tract after payment of costs, first, to the bank to the extent of the amount due on the Mitchell note, second, to the discharge of the judgments of appellants, and any balance to the bank; and to apply the proceeds of the sale of the life estate in one-third interest in the Atkinson tract to the judgments of appellants and any balance to the Estelle sons.

Affirmed in part, and in part reversed and remanded, with instructions.

On Motion for Rehearing by Appellee First National Bank of Cameron.

Appellee bank points out that the record shows judgments foreclosing tax liens upon the Mitchell tract, accruing prior to the bank's purchase under the trustee's sale; and urges that our judgment "is not elastic enough to admit of the payment of said judgment for taxes to the bank if it has paid them, or directly to the tax authorities."

Such judgments, if unsatisfied, are in no way affected by this proceeding, and a sale thereunder would of necessity be subject to such judgments.

If the bank has discharged any superior liens upon the property, it should be protected therein, and our former judgment is modified so as to permit the bank to make proof in this regard and to subrogate it to such superior liens as may have been discharged by it.

In all other respects the bank's motion for rehearing is overruled.

Granted in part, and in part overruled.

Motion for Rehearing by John R. and L. C. Estelle, Jr.

There is nothing in the motion which did not have our careful consideration when we handed down our original opinion. Counsel insists, however, that we should write upon the following point: The appeal bond was made payable to Estelle's sons, but not to their guardian ad litem, and it is urged that the bond was therefore defective; that this court acquired no jurisdiction; and the appeal should be dismissed.

The record was filed in this court March 21, 1930, and this alleged defect in the bond

was first called to this court's attention in the brief of Estelle's sons filed October 8, 1930.

The precise contention of appellant was overruled in the recent case of Roberts v. Stoneham (Tex. Civ. App.) 31 S.W.(2d) 856, 858, from which we quote: "Under R. S. art. 1840, defects both of substance and of form in an appeal bond may be cured by amendment. Such defects are not jurisdictional (Foster v. Bunting (Tex. Civ. App.) 19 S.W. (2d) 784), and are waived by failure to present objections to the bond by motion within thirty days after the transcript is filed. Court of Civil Appeals Rule 8; De Proy v. Progakis (Tex. Civ. App.) 259 S. W. 620."

The motion is overruled.
Overruled.