**COLLIER et ux. v. FORD et al.**

No. 10073.

Court of Civil Appeals of Texas. Galveston.

March 14, 1935.

Rehearing Denied April 4, 1935.

M. L. Pepper, of Houston, for appellants.

Roberts & Orem, of Houston, for appellees.

GRAVES, Justice.

The appellants, J. A. Collier and wife, sued the appellees, D. A. Ford, Ford Realty Com-

pany, and Lone Star Realty Company, to cancel certain deeds passing between the appellees affecting the premises in the city of Houston occupied and claimed by the appellants as their homestead, and to remove consequent clouds upon their alleged title thereto, further claiming $5,000 damages.

The appellees answered appellants' declared-upon cause of action with a general demurrer, general denial, and a plea of not guilty; then, becoming actors themselves, they countered with a cross-action in trespass to try title for the property against appellants, alleging that they were the owners thereof and that appellants were unlawfully withholding same from them, further asking nominal damages and costs.

These answering pleadings of the appellees were replied to by appellants with a general demurrer, general denial, and a plea of not guilty.

After hearing the evidence for both parties, the trial court refused different motions of the appellants for peremptory instructions in their favor, but granted like motions of the appellees for such instructions in their own behalf, and entered final judgment in favor of all the appellees on appellants' original cause of action, to the effect that the latter take nothing, and further ordered that the appellee Lone Star Realty Company not only recover the title and possession of the property from the appellants, but that it have also a recovery of $677.34 against them as for rent thereon from January 5th of 1932 to the date of this trial.

The appeal of the appellants from that judgment is now regularly before this court.

Preliminarily the material facts briefly and generally stated are:

Ben Neff, on November 30, 1928, had purchased the property from D. A. Ford, executing as a deferred part of the consideration therefor his vendor's lien note thereon for $6,500, to mature five years after its date, with interest thereon payable semiannually; the note being secured by a deed of trust of even date therewith, also carrying the lien in favor of W. P. Hamblen as trustee for the use and benefit of Ford.

Thereafter, on the 11th day of August of 1930, the appellants bought the property from Neff and moved into the same for occupancy as their homestead, not assuming the payment of the $6,500 outstanding Neff indebtedness thereon, but buying expressly subject thereto; subsequently, D. A. Ford assigned the note and deed of trust securing same to Mrs. L. E. Noble, who at the time of the execution of the deeds herein sought to be canceled was the sole owner and holder of both such note and deed of trust, her grantor therein, D. A. Ford, having continued, however, to act as her agent with reference to such property at all times; the deed of trust provided that, should Hamblen, the original trustee, be unable or refuse to act as such trustee, a successor or substitute trustee was to be in writing appointed by the then holder of the indebtedness; the deed of trust also contained this pertinent provision: "It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the matters therein stated, and all prerequisites to the said sale shall be presumed to have been performed."

On the 5th day of January of 1932, D. A. Ford, purporting to act as such substitute trustee under this deed of trust, and under recitation that the maker of the note had defaulted on interest due, on which account he had been requested by the holder of the note to do so, sold the property to the appellee, the Ford Realty Company, for the sum of $1,000, the deed evidentiary thereof reciting, among other things, this: "Whereas the said Ben Neff made default in the interest and taxes, on said note, which interest became due on May 30, 1931, (he only paid the sum of $30.00 on said interest payments) and Mrs. L. E. Noble, owner and holder of said note and lien on said property securing the same, has requested me on account of such non payment to sell said property as Substitute Trustee."

Thereafter, on the 30th of January of 1932, the Ford Realty Company, acting by D. A. Ford, as its president, conveyed the property to the Lone Star Realty Company; the two deeds thus described being the ones the appellants sought to cancel by this suit, under averments that they were illegal and void, and constituted clouds upon their title to the land.

Appellants' grounds of attack upon the two deeds and the proceedings in pari materia therewith were, in effect, these:

(1) The sale by Ford as substitute trustee was invalid, because the deed of trust provided that, upon default on the indebtedness thereby secured, it should only be made upon request of the trustee by the then holder of the note, which was not complied with, in that Mrs. Noble, who was such owner and holder, made no such request.

(2) No proper demand having been first made upon Hamblen, the original trustee, to act, nor any refusal by him to do so having

been shown, the appointment of Ford as a substitute trustee and the sale by him as such were both void.

(3) Substitute trustee Ford was then president of the company to which his sale was made, also personally owning one-half of its corporate stock, which facts invalidated the same; the trust deed not providing that any such sale might be made.

(4) The deed of trust having provided that "notice, as is or may be required by law" must be given in advertising the property for sale, and no personal notice of the sale having ever been given to the grantor, Neff, or his assigns, such provision was not complied with, and the sale in consequence was ineffective.

(5) Mrs. Noble, the holder at all times of the note, through D. A. Ford as her agent, having accepted from them part payments of interest in default, led the debtors (appellants) into believing that the property would not be sold, and thereby waived the strict requirements as to prompt payment contained in the deed of trust, and became thereafter estopped in equity from having the property sold out nevertheless as under such requirements.

(6) The grossly inadequate price of $1,000 at the substitute trustee's sale of property admittedly then worth $4,500 or $5,000, coupled with the other infirmities alleged, supra, required the setting aside thereof.

(7) The deed of trust providing that failure to pay interest when due should mature the whole indebtedness of both principal and interest, or either, at the holder's option, being harsh provisions and not self-executing, entitled appellant debtors to notice of the exercise of such options and advance demand upon them for compliance therewith, neither of which having been given, the sale of the property, in the absence thereof, was invalid as against their rights.

(8) Appellee Ford's testimony (1) that he had notified appellants after November 5th of 1931 that he was going to sell them out under the deed of trust, and (2) that the $65 monthly payment received by him from appellants on 5th day of January of 1932, was for rent rather than interest, under a new agreement made after November 5th of 1931, and appellant J. A. Collier's denial of both statements, raised material issues of fact for the jury.

(9) The Lone Star Company, not having received a deed to the property until January 30th of 1932, was not entitled to any rent prior thereto.

In their turn the appellees defend the peremptory instructions in their favor upon considerations that may fairly be thus recapitulated:

(1) That the quoted provisions in the deed of trust that the recitals in the conveyance pursuant to it shall be full evidence of the matter stated and all prerequisites of the sale shall be presumed to have been performed, create a well-nigh irrebuttable presumption of the regularity of the sale, or at least cast the burden upon appellants of showing that no request to make it was made, which they did not meet by sufficient evidence, citing in that connection 29 Texas Jurisprudence, page 978, § 138, and Allen v. Farm & Home Savings & Loan Ass'n of Missouri et al. (Tex. Civ. App.) 58 S.W.(2d) 866.

(2) Appellants, having purchased the property merely subject to the lien foreclosed rather than under the assumption of the indebtedness secured thereby, were not entitled to the notice or demand before the sale that was claimed by them; the prior proceedings by which the lien was created being as to them res inter alios.

(3) Since appellants' suit was for the cancellation of the two deeds and the removal of an alleged cloud cast thereby upon their title, it constituted an equitable proceeding which, as a prerequisite to a right on their part to question the validity of the substitute trustee's sale, required of them that they tender the balance due on the note involved.

(4) Since Mrs. L. E. Noble was the holder of the note and deed of trust at the time of the sale so made, she was a necessary party to the suit, and appellants' failure to bring her in rendered their attack upon the substitute trustee's sale a collateral one, which, in consequence, could at most have been only voidable and not in fact void.

(5) That a sale to a corporation in which the trustee owns stock is not in law the same as one made by him to himself individually, nor is one of the latter character void when unaccompanied by an offer to restore the consideration paid; these authorities being cited in this connection: Marsh v. Hubbard, 50 Tex. 203; Thornton v. Goodman (Tex. Com. App.) 216 S. W. 147, reversing (Tex. Civ. App.) 185 S. W. 926; Bohn v. Davis, 75 Tex. 24, 12 S. W. 837; Howard v. Davis, 6 Tex. 174; Scott v. Mann, 33 Tex. 725, 726.

■ Upon consideration of the cause as a whole, it is concluded here that, while the evidence adduced by them did not entitle the appellants as a matter of law to the peremptory instructions they asked, it did raise

issues of fact in their behalf which, if they had been submitted and determined in their favor, would have entitled them to a judgment determining the substitute trustee's sale and the two deeds made thereunder invalid as against them; the rule of law in such situations is that only the evidence favorable to the parties so ruled against should be considered, that it must be construed in the most advantageous light to them, that all conflicts should be disregarded, and every reasonable inference should be drawn for their benefit. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Barron v. Houston, etc., Railway Co. (Tex. Com. App.) 249 S. W. 825; Texas Employers' Ins. Association v. Herring (Tex. Com. App.) 280 S. W. 740; Browning v. Beck (Tex. Civ. App.) 73 S.W.(2d) 626.

Before inquiry into the details of the evidence presented, some rules of law, thought to be well established, may be thus cited upon the conflicting views outlined by the parties in the several contentions set out, supra:

1. The recitals in the trustee's deed made pursuant to the provisions in the deed of trust, before herein quoted, were not conclusive but at most only constituted prima facie evidence of the truth thereof, and enough evidence having been presented in this instance to raise an issue over whether or not they were true in fact, it could not be held thereunder as a matter of law that the prerequisites of the sale had been complied with. Ward v. Forrester, 35 Tex. Civ. App. 319, 80 S. W. 127; Hart v. Estelle (Tex. Civ. App.) 34 S.W.(2d) 665, which was affirmed in (Tex. Com. App.) 55 S.W.(2d) 510; Bowman v. Oakley (Tex. Civ. App.) 212 S. W. 549.

2. The authorities cited by the appellees under their fifth answering proposition, as quoted, supra, do not sustain it as applicable to the situation here presented, at least, because the deed of trust contracts involved in all of those cases expressly permitted the trustee to become a purchaser at his sale, whereas the reverse of that situation obtains here, in that there was no such provision in this deed of trust. Burdick on Real Property at page 556; Irion v. Yell, 62 Tex. Civ. App. 522, 132 S. W. 69, 74.

3. The appellees' second counter proposition, to the effect that appellants were neither entitled to notice nor demand upon them in advance of the sale upon the consideration that they had purchased the property only subject to and had not assumed the indebtedness against it, is considered unsound, under the law thus declared in 29 Texas Jurisprudence, at page 900: "The difference between a purchaser of land assuming the payment of a lien indebtedness thereon and in purchasing the land subject to such indebtedness is simply that, in the former case the purchaser becomes personally liable for the payment of the indebtedness, while in the latter case no such personal liability exists."

To the same purport are the texts of Burdick on Real Property at pages 493 and 495, respectively, where these separate and more extended statements are made:

"The grantee, or assignee, in a sale of mortgaged land, succeeds, ordinarily, to the title and interest of his grantor, including all the latter's rights and equities in the premises conveyed. If the grantee has notice of the mortgage, he takes subject to the rights of the mortgagee, regardless of the nature of the title or interest which the grantee obtains, which under the legal theory of mortgage would be a mere equity of redemption, or, under the equitable theory, a legal title incumbered with a lien. * * *

"When mortgaged property is sold under a valid power of sale, the mortgage debt is thereby extinguished, as is also any conveyance of title made by the mortgagor subsequent to the mortgage. The mortgagor's equity of redemption is likewise barred. The effect, in fact, is the same as strict foreclosure in a suit in equity."

Wherefore, as purchasers of and privies under the original mortgagor, Neff, the appellants, not being strangers to the title (1), acquired an equity of redemption in the property, which was a valuable right that could not be cut off nor destroyed by the substitute trustee's sale without due compliance upon his part and that of the mortgagee with the provisions of the deed of trust; (2) they became as such purchasers and privies not only entitled originally to advance notice of the intended sale, but thereafter to question its validity in this direct proceeding to set it aside; that not being a collateral attack. Hart v. Estelle (Tex. Civ. App.) 34 S.W.(2d) 665, affirmed in (Tex. Com. App.) 55 S.W.(2d) 510, supra.

4. In these circumstances, appellants were not required to tender the balance due on the outstanding mortgage indebtedness as a condition precedent to so making this direct attack upon the substitute trustee's sale and therein showing by evidence, if they could, that it was as to them wholly invalid. Hart v. Estelle, supra, 34 S.W.(2d) 665, at page

670; Boone v. Miller, 86 Tex. 74, 23 S. W. 574.

◼◼ 5. Neither, under the foregoing pronouncements, did appellants' failure to make Mrs. Noble a party hereto render their attack upon the sale nonmaintainable as being a collateral one; furthermore, the appellees countered against them with a regular suit in trespass to try title for the land, which they could, under their plea of not guilty, defend by showing the invalidity of the substitute trustee's sale and thereby destroying the title of their adversaries emanating therefrom. Pepper v. Continental State Bank (Tex. Civ. App.) 60 S.W.(2d) 1089; Bracken v. Bounds, 96 Tex. 200, 71 S. W. 547.; Ward v. Forrester, 35 Tex. Civ. App. 319, 80 S. W. 127; Hart v. Estelle,. supra; Home Fire & Marine Ins. Co. v. Swanner (Tex. Civ. App.) 57 S.W.(2d) 1130; Michael v. Crawford (Tex. Civ. App.) 150 S. W. 465, and Id., 108 Tex. 352, 193 S. W. 1070; Rawlings v. Lewis (Tex. Civ. App.) 191 S. W. 784.

◼ The legal title prior to the two deeds attacked having been in the substitute trustee, not in Mrs. Noble, against whom no personal judgment was sought, she was not a necessary party, only the trustee himself and the two realty company grantees being such; hence it was at least the privilege of appellants not to bring her into such proceeding as they chose to prosecute.

◼ 6. If the appellee Ford as Mrs. Noble's agent, after recognizing and dealing with appellants as the successors and privies of Neff, accepted partial payments from them of past-due interest on the outstanding mortgage indebtedness either before or after this sale of the premises as such substitute trustee, without disclosing to them that such sale would be or had been made, and under circumstances reasonably calculated to lead them into believing that such sale neither would be nor had been made, a waiver of the strict payment provisions of the deed of trust thereby arose, and both he and his principal, Mrs. Noble, became estopped to thereafter assert the validity of the trustee's sale as against appellants. Diamond v. Hodges (Tex. Civ. App.) 58 S.W.(2d) 187; 17 Texas Jurisprudence at pages 134–135; Brooks v. O'Conner, 120 Tex. 126, 39 S.W.(2d) 14, at page 17; 2 Pomeroy on Equity, § 804; Cofer v. Beverly (Tex. Civ. App.) 184 S. W. 608.

◼ Appellants' testimony, appraised under the stated rule, in so far as deemed pertinent to the matter in mind, and in brief epitome, shows or tends to show: That at the time of the substitute trustee's sale of the property, indeed, up to the date of the trial of this cause below, the principal of the note so given by Neff and secured by the deed of trust involved had not become due; that the appellants had been, following their purchase from him, expressly recognized and dealt with by Ford in his capacity as Mrs. Noble's agent as being the successors in title under Neff as the original mortgagor; that they were given no notice, until after such trustee's sale had been made, that it would be made, nor that the then holder of the outstanding indebtedness had exercised the opinion of declaring the whole of it due for failure to pay interest in default, nor was any' advance demand made upon them to comply with any such requirement; while a default in the payment of interest was shown, it did not expressly or conclusively appear that any direct demand was ever made upon the original trustee, W. P. Hamblen, by the then owner and holder of the outstanding note, Mrs. L. E. Noble, nor by the appellee Ford himself, to sell the property involved at a time after default on payments had been made by Neff or his privies, appellants; that the property, according to the deed of conveyance thereof from the substitute trustee to the Ford Realty Company as purchaser, only brought the price of $1,000, whereas the appellee Ford himself testified that at that time it was worth from $4,500 to $5,000, and appellant Collier testified that, had he known at the time that such sale would be made, he could have raised $5,000 cash to protect his interests with; that in advance of, and even after, such sale by himself as such substitute trustee, the appellee Ford, as the agent of Mrs. Noble, the holder of the outstanding note, accepted from the appellants part payments of interest in default on the debt, without advising them that a sale thereof for a failure to pay the whole of the interest then due would be or had been made, and under conduct on his part leading them to believe that a satisfactory adjustment otherwise had been made between him and themselves.

Without recapture of any further testimony from much more of like or similar nature in the statement of facts, it is clear, under the legal principles above enumerated, that undetermined questions of fact upon which the validity of the substitute trustee's sale as against appellants 'depended, especially as to whether or not such a waiver by and consequent estoppel against the appellees arose, were .raised, wherefore the peremptory instructions granted were improvident; it follows that the judgment should be reversed,

and the cause remanded for another trial not inconsistent with this opinion.

Reversed and remanded.