ISAAC BUNN v. W. G. HOLLIDAY and J. W. WHITAKER, Trading as HOLLIDAY & WHITAKER, and R. C. DUNN, Trustee.

(Filed 22 January, 1936.)

1. **Mortgages H j—**

The purchase of property at a foreclosure sale of a deed of trust by the *cestui que trust* will be upheld in the absence of fraud and collusion.

2. **Mortgages H p—Plaintiff held estopped to attack validity of foreclosure sale.**

The *cestui que trust* purchased the land in question at the foreclosure sale of the deed of trust, and thereafter rented the land to the former owner for three years, the rent for each year being paid by the former

owner. *Held:* The former owner is estopped by his acquiescence and attornment to the purchaser from attacking the validity of the foreclosure sale.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL from *Devin, J.,* at March Term, 1935, of HALIFAX. Affirmed.

This is an action brought by plaintiff against the defendants to set áside a trustee's sale of certain land, alleged to be owned by plaintiff, and declare same null and void. To have marked "paid and satisfied in full" certain mortgages and deeds of trust on the property, which were duly recorded. To recover judgment against defendants Holliday and Whitaker for a sum set forth, and to declare plaintiff the owner of the land and that he be given possession of the same.

The defendants denied the material allegations of the complaint, and set up the plea of *res judicata* and estoppel.

*T. T. Thorne and L. L. Davenport for plaintiff.*
*Dunn & Johnson and Geo. C. Green for defendants.*

PER CURIAM. At the close of plaintiff's evidence the defendants in the court below made a motion for judgment as in case of nonsuit, C. S., 567. The court below allowed the motion, and in this we can see no error.

The record discloses: "It was admitted that the plaintiff theretofore was the owner of two tracts of land situate in Halifax County, North Carolina, one tract containing 239.15 acres, and the second tract containing eleven acres, more or less, all known as home place and farm of the plaintiff. It was further admitted that the plaintiff executed his note to the defendants to secure an indebtedness of $1,725, secured by the said lands, which said note was due and payable on 15 December, 1929, and it was further admitted that the defendant R. C. Dunn was attorney for the defendants. It was further admitted that the property had been sold by R. C. Dunn, trustee, in a deed of trust executed by the plaintiff to R. C. Dunn, to secure the said note of $1,725 to Holliday and Whitaker, and that at such sale Holliday and Whitaker became the purchasers of said land for the sum of $1,000, and are now in the possession of said lands. The defendants further admitted that R. C. Dunn, trustee in the said deed of trust, foreclosed the said deed of trust by selling said lands to satisfy said debt at the request of the defendants Holliday and Whitaker."

The plaintiff testified, in part: "I moved to this place in January, 1909, and lived there from then until a month or two ago, when they had the sheriff move me off—16 January, 1935. . . . I raised a

family there. When I was operating the farm I worked four mules regularly, and sometimes five, and since Mr. Holliday and Mr. Whitaker have had the place they work six regularly. In 1931, the year they took it away from me, I raised some tobacco, peanuts, and cotton. Since 1931 I have not had any tobacco, only had peanuts, cotton, and corn. In 1931, when Mr. Holliday and Mr. Whitaker took it, the 267 acres and improvements were worth anywhere from $12,000 to $13,000. . . . The paper is 'Holliday and Whitaker *v.* Isaac Bunn.' They really put me out; kicked everything I had out in the yard, and it was raining and sleeting at the time. My wife and I executed a deed of trust to R. C. Dunn on 8 April, 1929. I went to see Mr. J. W. Whitaker about getting the money. At the time there was a prior encumbrance on the land of between $3,100 and $3,300, to the Joint Stock Land Bank of Raleigh. It was one of the thirty-three-year mortgages and I was up on the installments. The reason I borrowed the money through Mr. Holliday and Mr. Whitaker was because I owed a note to the Scotland Neck Bank and it was being liquidated, and the agent told me something had to be done. . . . I went back, they said they would make the loan of $1,600 if I would agree to pay $125.00 bonus and I would make the note for $1,725 instead of $1,600. . . . I had to agree, under the conditions, to pay the $125.00 if he would give me a reasonable time to work it out. . . . The $25.00 for writing the paper was taken out of the $1,600 he let me have. The actual cash I got was $1,575. . . . It went on until December, 1930, and on or before 15 December I got a letter from the trustee saying that Mr. Whitaker and Mr. Holliday had placed in his possession the paper to be collected by paying the money or foreclosure, and to come to see him at once in Enfield. I went to see the trustee and he said he did not know anything he could do but would see Mr. Whitaker. . . . After running around with some friends to see everybody, I was not successful in getting the money and the trustee proceeded to foreclose, and that is what happened in 1931. That was about February, 1931. The trustee sold the land. I was a little late in getting to town and did not get there in time for the sale. Five months after the sale I went to Mr. Whitaker's office and he said he was the only and successful bidder for the price of $1,000. In my opinion the 267 acres of land and improvements were worth between $12,000 and $13,000 at that time. When Mr. Whitaker and Mr. Holliday took the property in like they did, they came to the field where I was at work. I was working five mules at the time. I asked Mr. Whitaker if they had to foreclose at that time; that my father was old, and asked him was there no way we could stay and rent and pay off what we owed. Mr. Holliday was there and he said I must get off at once. Mr. Whitaker said he thought they could handle what they wanted in the other

12—209

houses and let me stay on, and that is what I did. There was nothing else in sight and that is why I agreed to rent from Mr. Whitaker, because he told me he would allow me to rent to try to pay off the indebtedness I owed and try to regain my home. It must have been in the month of March when I was talking to Mr. Whitaker and Mr. Holliday about renting the land because ten days had expired for raising the bid. I rented the land for that year and two other years. . . . The one-half I turned over to them each year was around $700 to $800. I mean they got that much from me as rent for the years 1931, 1932, and 1933. . . . At the time of the sale of the land all the buildings I have described as being on the land were in good condition; they are in fair shape now."

It is well settled in this jurisdiction that the *cestui que trust* has a right to buy at the trust sale unless fraud or collusion is alleged and proved. *Monroe v. Fuchtler,* 121 N. C., 101 (104); *Hayes v. Pace,* 162 N. C., 288; *Winchester v. Winchester,* 178 N. C., 483; *Simpson v. Fry,* 194 N. C., 623. See *Hinton v. West,* 207 N. C., 708. The principle is different as between mortgagor and mortgagee. *Lockridge v. Smith,* 206 N. C., 174.

After the sale by the trustee and the purchase by the defendants Holliday and Whitaker of the plaintiff's land, the plaintiff, who was *sui juris,* rented the land from them and for several years paid the rent to them. We think from plaintiff's testimony that he is estopped and the nonsuit was proper. Plaintiff's attornment is sufficiently unequivocal and acquiesced in for so many years and has barred any action, if one ever existed. From plaintiff's testimony the case is a distressing one and his misfortune is to be deplored, but we must abide by contracts where there is no fraud or mistake alleged and proved.

The judgment of the court below is

Affirmed.

Devin, J., took no part in the consideration or decision of this case.